**William David HOVILA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 56989.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 8, 1978.

Rehearing Denied March 8, 1978.

---

Howard G. Wilson, Mesquite, for appellant.

Henry Wade, Dist. Atty., W. T. Westmoreland, Jr., Stephen P. Tokoly, Norman Kinne and Robert E. Whaley, Asst. Dist. Attys., Dallas, for the State.

## OPINION

DOUGLAS, Judge.

In 1974, appellant, William David Hovila, was convicted of murder and assessed the death penalty. We reversed the conviction on appeal because several prospective jurors had been excused in violation of the *Witherspoon* decision. 532 S.W.2d 293 (Tex.Cr. App.1975). On remand, appellant was convicted of capital murder and again assessed the death penalty. This appeal followed.

No challenge is made to the sufficiency of the evidence to support the conviction. The evidence introduced at the guilt stage of the trial established that on June 27, 1973, Hovila went to the office of Henry J. McClusky, Jr., an attorney he had known for several months. He forced McClusky at gunpoint to write a check in the amount of $500.00 payable to Hovila. He then injected a drug into McClusky and drove him to an undeveloped area of Dallas County. After he stopped, he put the then unconscious McClusky on the ground and shot him three times.

McClusky's body was found twelve days later. The medical examiner testified that any one of the three bullet wounds could have caused McClusky's death, and that the body was so thoroughly decomposed it was impossible to determine whether a drug had been a contributing cause.

The first contention is that prospective jurors Glass and Boyd were improperly excused for cause under V.T.C.A., Penal Code, Section 12.31(b).[1] This section provides:

1. A similar provision was contained in Article 1257(d), V.A.P.C., 1925, as amended (Acts 1973, 63rd Leg., ch. 426, p. 1122—effective June 14, 1973 until January 1, 1974, effective date of present Penal Code).

"Prospective jurors shall be informed that a sentence of life imprisonment or death is mandatory on conviction of a capital felony. A prospective juror shall be disqualified from serving as a juror unless he states under oath that the mandatory penalty of death or imprisonment for life will not affect his deliberations on any issue of fact."

Prospective juror Glass testified that he believed the death penalty was a proper punishment in certain cases. When asked by the prosecutor whether he could state under oath that the mandatory sentence, on conviction, of life imprisonment or death would not affect his deliberations on any fact issue, Glass replied that he could not because "judging something that would take the life of a man would have to affect . . . ." his deliberations. He then exhibited some confusion with respect to the oath and stated that he would not give untruthful answers to the questions submitted to the jury.

Glass further testified as follows:

"A. I would have to be truthful and say that it would certainly affect the way in which I interpreted certain facts coming to me, that is, as I understand it, our job would be to interpret these facts, there's obviously a question about them or there wouldn't be a trial.

"Q. Right and I certainly—

"A. Particularly the second question would, I think I would have to be truthful and say that it would affect the way I interpreted those facts.

"Q. Well, then you are saying it would affect your deliberations?

"A. Yes, I have said that before, didn't I?

"Q. You would answer them truthfully, but you would have—the way you answered them—the mandatory sentence then would have some effect on the way that you answered those questions?

"A. I think so, yes."

Glass' answers reflect that the potentially mandatory penalty of death would have affected his perception of the facts, and that he could not have stated under oath that such penalty would not affect his deliberations on the fact issues. Thus, this prospective juror was disqualified under Section 12.31(b) and was properly excused by the court.

▇▇▇▇ Prospective juror Boyd testified that she favored imposition of the death penalty in certain cases, but she further testified that her deliberations on the fact issues would be affected by the potentially mandatory assessment of that penalty. She related that she could not state under oath that her deliberations would not be affected.

Later, defense counsel inquired whether Boyd would answer truthfully the fact issues submitted to the jury. She stated that she would.

The record then reflects that Boyd reiterated that her deliberations on the fact issues would be affected but that she would answer the questions truthfully. She testified in this regard as follows:

"Q. (By Mr. Tokoly) Would not affect their deliberations on these issues of fact in the case, and I thought you told me they would?

"A. It would.

"Q. And it would affect you in answering those questions; is that correct?

"A. That's what I said.

" *   *   *

"Q. (By Mr. Simmons) Okay, I will rephrase the question. Would the mandatory death or life affect you to the extent that you would be untruthful in answering the questions?

"A. No, I wouldn't be untruthful, but it would, you know, it would affect me to the point, you know, where I probably would get confused about it, you know, emotionally, mixed up emotionally.

" *   *   *

"A. What I am saying is that the death penalty, you know, it probably would affect whether I could decide to say yes or not, that's what I am saying, I just can't—

" *    *    *

"Q. (By Mr. Simmons) And I have one other question, would you answer the questions truthfully?

"A. Yes.

" *    *    *

"MR. TOKOLY: Judge, I think she has clearly said that the death penalty would affect the way she answered those questions and it would affect her deliberations; is that right?

"A. It would affect it, but I am not saying that I would tell a story, I mean, you know, do it untruthfully."

Section 12.31(b) does not disqualify prospective jurors on the basis of whether or not they can state under oath they will answer the fact questions truthfully. This provision disqualifies those jurors who cannot state under oath that the mandatory penalty of death or life imprisonment would not affect their deliberations on any issue of fact. Prospective juror Boyd forthrightly stated that the possible infliction of the death penalty would confuse her and disturb her emotionally and that, as a result, her deliberations on the fact issues would be affected. The clear implication of her testimony was that she would not be *consciously* deceptive. Since she could not

state under oath that her deliberations would not be affected, the trial court properly excused her.

Appellant next contends that prospective jurors Marr, Jenkins, Goolsby and Lucks were excused in violation of Section 12.-31(b) and *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).[2]

■ The record reflects that Marr and Jenkins were excused without objection. Failure to object to the improper exclusion of veniremen waives that right and such exclusion cannot be considered on appeal. *Boulware v. State,* 542 S.W.2d 677 (Tex.Cr. App.1976), cert. denied 430 U.S. 959, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977).

■ Prospective juror Goolsby testified that she was uncomfortable with the concept of the death penalty and that she could not consider the death penalty in this type of case. She further testified that she was certain the mandatory penalty of death or life imprisonment would affect her deliberations on the fact issues and that she could not state under oath that such deliberations would not be affected.

Prospective juror Lucks was ambiguous with regard to her belief in the death penalty. She testified that she had previously supported the death penalty but that she was reconsidering her position on the issue and was undecided at that time. Lucks vacillated, however, and indicated by her responses that she believed the death penalty was a proper punishment for capital offenses but that she could not sit on a jury

2. In *Witherspoon,* the Supreme Court of the United States stated:

"Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected." The Court further stated:

"Unless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it simply cannot be assumed that that is his position."

The Court elaborated in *Boulden v. Holman,* 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969):

"[i]t is entirely possible that a person who has a 'fixed opinion against' or who does not 'believe in' capital punishment might nevertheless be perfectly able as a juror to abide by existing law—to follow conscientiously the instructions of a trial judge and to consider fairly the imposition of the death sentence in a particular case."

And, in *Davis v. Georgia,* 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976), the Court reaffirmed its adherence to the *Witherspoon* doctrine and held that no death penalty can stand if a single venireman is excluded in violation of that doctrine.

and vote for the punishment herself. She then stated that the mandatory penalty would affect her deliberations on the fact issues and that, under oath, she could not state otherwise.

In the decision involving appellant's first murder conviction, *Hovila v. State,* 532 S.W.2d 293 (Tex.Cr.App.1975), we held that the holding of *Witherspoon* was still viable in light of the new statutory scheme providing for the imposition of the death penalty adopted after the decision in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). However, in *Moore v. State,* 542 S.W.2d 664 (Tex.Cr.App.1976), we held that it was unnecessary to consider the *Witherspoon* question where the prospective juror had been disqualified under Section 12.31(b).

While it might be argued as to whether the testimony of Goolsby and Lucks in the present case would have disqualified them under the holding in *Witherspoon,* it is certain that their answers disqualified them under Section 12.31(b). See and compare *Moore v. State,* supra; *Burns v. State,* 556 S.W.2d 270 (Tex.Cr.App.1977).

■ Appellant next contends that the court erred in failing to sustain his challenge for cause to a venirewoman called out of order. He relies on Article 35.20, V.A.C. C.P., which provides:

"In selecting the jury from the persons summoned, the names of such persons shall be called in the order in which they appear upon the list furnished the defendant. Each juror shall be tried and passed upon separately. A person who has been summoned, but who is not present, may, upon his appearance before the jury is completed, be tried as to his qualifications and impaneled as a juror, unless challenged, but no cause shall be unreasonably delayed on account of such absence."

Prospective juror Vinson was not present when he was called for examination. Thereafter, prospective juror Duer was examined by the State. The prosecutor and defense counsel agreed that Duer should be excused.

Prospective juror Neely was called next. Appellant challenged her for cause on the ground that she was called out of order. The court overruled the challenge. After further examination, defense counsel used a peremptory challenge to remove Neely from the panel.

Later, prospective juror Vinson appeared and was examined. Counsel for the opposing sides agreed to excuse him.

The record is incomplete with respect to the contention raised on appeal because it contains no jury list and, apparently, none was requested. Although prospective juror Neely was called out of order, appellant made no objection on this ground until she had been examined at length. Her testimony occupies 30 pages of the statement of facts before such objection appears. Moreover, appellant did not object to the examination of prospective juror Duer although he, too, was called out of order before Neely was questioned. Thus, any error in calling prospective juror Neely out of order was not reversible error.

After the prospective juror in question was removed, the court granted appellant's request for two additional peremptory challenges, and there is no indication that he did not receive a fair and impartial jury.

■ Appellant next urges that the trial court commented on the weight of the evidence.

In this connection, the record reflects the following cross-examination of Michael Lawson, a witness for the State, and comment thereon by the trial court:

"Q. (By Mr. Simmons) He (appellant) was a friend of yours?

"A. That's correct. I don't put anybody down for what they are.

"Q. So it didn't matter to you what he was, as long as he was still a friend?

"A. That's correct.

"Q. He was such a good friend that you called the Mesquite Police Department and tried to put him in the electric chair, didn't you?

"THE COURT: That's argumentative.

"MR. SIMMONS: I didn't hear an objection . . ., Judge.

"THE COURT: I'm saying it's argumentative.

"MR. SIMMONS: Then we have no further questions of this witness."

This did not amount to a comment on the weight of the evidence by the judge. He only stated that the question was argumentative. Further, there was no objection to the comment of the judge, thus, it is not properly before us for review. *Minor v. State,* 469 S.W.2d 579 (Tex.Cr.App.1971); *Jenkins v. State,* 488 S.W.2d 130 (Tex.Cr. App.1972).

■ The final contention is that the court erroneously excluded evidence at the punishment stage of the trial. Article 37.-071(a), V.A.C.C.P., provides that "evidence may be presented as to any matter that the court deems relevant to sentence." Appellant argues the excluded evidence was relevant because it showed that he would not be a continuing threat to society. See Article 37.071(b)(2), V.A.C.C.P.

In January, 1974, appellant was mistakenly released from jail and he went home to Wichita Falls for four days. In this connection, Marian Hovila, appellant's mother, was called as a witness by appellant at the punishment proceeding. The court excluded her testimony regarding appellant's activities while he was at home.

Mrs. Hovila testified out of the presence of the jury that appellant remained in her house during the greater part of that four-day period. She stated, however, that he applied for a driver's license and went to a dance one night with friends. She further stated that appellant did nothing unusual and that when he discovered his release was a mistake he returned to Dallas with the intention of surrendering to the authorities. There is nothing in the record to indicate that appellant did surrender voluntarily.

This Court has stated that in determining the probability that a defendant in a capital murder case will be a continuing threat to society, the jury could consider whether he had a significant criminal record; whether his prior criminal conduct was severe; whether he was young or old; whether he was acting under duress or the domination of another at the time of the commission of the offense; and whether he was under an extreme form of emotional pressure not far removed from insanity. See *Jurek v. State,* 522 S.W.2d 934 (Tex.Cr.App.1975); and *Robinson v. State,* 548 S.W.2d 63 (Tex.Cr. App.1977).

In *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), the Supreme Court of the United States held that this state's new statutory scheme for capital murder was constitutional because Article 37.071, V.A.C.C.P., assures that all relevant information relating to the defendant will be introduced in evidence. Subsequently, we observed in *Robinson v. State,* supra, that that statute "allows a trial judge broad discretion in determining just what constitutes 'relevant evidence' . . . " at the punishment stage. 548 S.W.2d at 65.

The evidence in the instant case that Hovila did not murder or commit other criminal acts during a four-day period would not show that he probably would or would not be a continuing threat to society. The trial court's error, if any, in refusing to admit this evidence was not so harmful as to require us to reverse.

The judgment is affirmed.

ROBERTS and PHILLIPS, JJ., concur in the result.

VOLLERS, J., not participating.