**Earnest Lee SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 58288.

Court of Criminal Appeals of Texas, Panel No. 2.

Feb. 6, 1980.

Rehearing Denied March 26, 1980.

Melvyn Carson Bruder, Archibald C. McColl, Dallas, for appellant.

Henry Wade, Dist. Atty., Stephen J. Wilensky, and Janice Potts, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, TOM G. DAVIS and CLINTON, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for murder. After finding appellant guilty, the jury assessed punishment at fifty years.

Augustina Fletcher testified that she and her husband, Bernice Fletcher, were working at a Stop and Go Store in Dallas on January 3, 1977. Fletcher related that two men entered the store and approached her husband who was near the cash register. One of the men pulled a revolver out of his shirt. While Fletcher's husband struggled with the first man, the second man produced a sawed-off shotgun from under his coat. Bernice Fletcher died as a result of a wound from the shotgun. Fletcher identified appellant as the individual with the shotgun.

In his first ground of error, appellant contends that the trial court erred in overruling his objection to the in-court identification testimony by Fletcher. He maintains that the State's failure to produce one of the sets of photographs which was used during a pretrial photo spread deprived him of his right to cross-examination. He further contends that without the set of photographs, the State could not discharge its burden of showing that Fletcher's identification testimony was based upon her observations at the time of the offense.

The court held a pretrial hearing on the admissibility of Fletcher's identification tes-

timony. Fletcher testified that the men entered the store about 3:30 p. m. They approached her husband at the cash register. She stated that she was standing to the rear of her husband and observed appellant display a shotgun which had been hidden under his coat.

One week after the offense, Officer E. S. Carlin, of the Dallas Police Department, showed Fletcher a set of black and white photographs. All of the photographs were mug shots of black men of approximately the same age. Fletcher related that Carlin placed the pictures on a table and asked if she recognized any of the men. Fletcher picked out a picture of appellant.

Following the first photo spread, Fletcher told Carlin that she would like to see some color photographs. Pursuant to her request, Fletcher was shown several color mug shots of black men of approximately the same age. Fletcher testified that without any type of hint or suggestion from Carlin, she once again picked out a picture of appellant. Lastly, the witness stated that even if she had never seen the photographs, she would still have been able to identify appellant, based upon her opportunity to observe him at the time of the offense.

During cross-examination, appellant's counsel requested that he be supplied with both sets of photographs which were shown to Fletcher. The State turned over the second set of photographs. However, the prosecutor informed the court that the first set of photographs was no longer available. After the court asked whether the State had access to the first set of photographs, the prosecutor stated:

"MISS POTTS: No, sir. I requested them from Investigator Carlin who was the man who showed Mrs. Fletcher both sets of photographs. He informed me that the first group which is the black and white group had not been kept together and it was not put in his file on this case. He did keep the colored photographs in his file but the rest were returned to the Dallas Police Department and he doesn't know what other photographs were used.

"THE COURT: You made an effort to secure those photographs?

"MISS POTTS: Yes, I have.

"THE COURT: They're not available to the State?

"MISS POTTS: They're not available."

At the conclusion of the hearing, the court ruled that Fletcher's identification testimony would be admissible. The court found that her identification was based solely upon viewing the appellant at the time of the offense. The court further found that her ability to identify appellant was not influenced by having seen the photo spreads.

◼ We find that there is evidence in the record to support the trial court's finding that Fletcher had an opportunity to view appellant at the time of the offense and that her identification testimony was based upon those observations. Appellant's contention that the State was required to produce the first set of photographs in order for Fletcher's testimony to be admissible is without merit.

◼ We further find that to the extent that the State's failure to produce the first set of photographs hampered appellant's ability to cross-examine Fletcher, the error, if any, was harmless beyond a reasonable doubt. The record reflects that Fletcher was cross-examined extensively with the aid of the second set of photographs. Her description of the first set of photographs and the manner by which she selected appellant's picture in no way suggests any improper action by Officer Carlin. Even if appellant could have shown that the photographs themselves were in some way suggestive, Fletcher's testimony would have nevertheless been admissible. She testified and the court found that her identification was based upon observing appellant at the time of the offense. Thus, the testimony had an independent origin of any impermissibly suggestive pretrial photographic identification procedure. This independent origin rendered the testimony admissible. See, *Komurke v. State*, Tex.Cr.App., 562

S.W.2d 230; *Bermudez v. State*, Tex.Cr. App., 533 S.W.2d 806. Appellant's first ground of error is overruled.

In his second ground of error, appellant contends that the trial court erred in admitting a mug shot of appellant into evidence. He maintains that the mug shot constituted evidence of an extraneous offense because it contained the notation "Police—Dallas—Texas—155843—6/27/76." The instant offense occurred on January 3, 1977.

When the State offered the mug shot of appellant into evidence, the court asked if there were any objections to its admission. In response to this inquiry, appellant's counsel stated:

> "MR. HELFT (defense attorney): We have no objections, Your Honor. Mug shots are not admissible in front of the jury.
> "THE COURT: Overrule the objection. It will be admitted."

■ The Court has held that upon a proper and timely objection, a mug shot which tends to show the commission of an extraneous offense is inadmissible. See, *Richardson v. State*, Tex.Cr.App., 536 S.W.2d 221. The proper procedure is to remove all identification marks from the picture which tend to show the commission of an extraneous offense. See, *Huerta v. State*, Tex.Cr.App., 390 S.W.2d 770.

■ We have consistently held that the failure to object waives any error in the admission of evidence tending to show an extraneous offense. See, *Von Byrd v. State*, Tex.Cr.App., 569 S.W.2d 883; *Chambers v. State*, Tex.Cr.App., 568 S.W.2d 313. In the instant case, appellant not only failed to object, he expressly waived any error when he informed the court "we have no objections."

■ Appellant relies on *Walls v. State*, Tex.Cr.App., 548 S.W.2d 38. In that case, the Court found that although counsel's objection was not as specific as it should have been, it was specific enough to apprise the court as to the basis of the objection. *Walls v. State*, supra at 40. We find the instant case to be distinguishable. Here, we are confronted with a record in which counsel explicitly waived any objection to the admission of the evidence. Counsel may not state the basis for an objection which he has expressly waived and preserve error for review before this Court.

In his third ground of error appellant contends that the trial court erred in commenting on the weight of the evidence. He maintains that the comment occurred when the court overruled an objection to the prosecutor's question which assumed as a fact that appellant had killed the deceased.

On redirect examination of Fletcher, the prosecutor asked the following question:

> "Q. After this incident after your husband had been killed by Earnest Lee Smith with a shotgun—
> "MR. HELFT: Your Honor, I object to that. That's the issue we're trying the case on. She can't say that.
> "THE COURT: Overrule your objection."

■ Art. 38.05, V.A.C.C.P., provides:

> "In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case."

To constitute reversible error, a comment by a court must be reasonably calculated to prejudice the defendant's rights. *Varela v. State*, Tex.Cr.App., 561 S.W.2d 186; *Hernandez v. State*, Tex.Cr.App., 530 S.W.2d 563.

■ Appellant relies on *Dunbar v. State*, Tex.Cr.App., 551 S.W.2d 382. In that case, the conviction was reversed because of improper jury argument which constituted direct references to the trial court's alleged beliefs about the case. In the instant case, the court's action in overruling appellant's objection to the question did not constitute a comment on the weight of the evidence. The court merely carried out its duty in ruling upon appellant's objection and did

not embellish the ruling with an unwarranted comment. Cf. *McClory v. State*, Tex.Cr. App., 510 S.W.2d 932.

On direct examination, Fletcher had testified that appellant entered the store with a shotgun. She related that the shotgun had discharged and killed her husband. The prosecutor's question merely incorporated the prior testimony of the witness.

■ Appellant's objection in the instant case went to the propriety of the prosecutor's question. Following the court's action in overruling his objection, appellant failed to object that the court's action constituted a comment on the weight of the evidence. Failure to object to this alleged comment preserves nothing for review. See, *Hovila v. State*, Tex.Cr.App., 562 S.W.2d 243; *Jenkins v. State*, Tex.Cr.App., 488 S.W.2d 130. Appellant's third ground of error is overruled.

■ In his fourth ground of error, appellant maintains that the trial court erred in overruling his objection to evidence which bolstered Fletcher's identification testimony. He contends that only "slight discrepancies" were developed in Fletcher's identification testimony on cross-examination.

Officer Carlin testified that following the instant offense, he showed a group of photographs to Fletcher. Carlin stated that Fletcher picked out one of the photographs. Following this identification, Carlin secured an arrest warrant and apprehended appellant.

The record reflects that on cross-examination, Fletcher testified that the assailants were in the store from three to five seconds. She stated that due to the size of the door, normally, only one person at a time would enter the store. The assailant with the revolver entered the store first. Fletcher testified that the second individual (appellant) was six inches shorter than the man with the revolver.

As the men approached the counter, Fletcher was standing approximately one foot behind and to the right of her husband. The taller of the assailants was standing to the deceased's right and the individual with the shotgun was in front of the cash register. She testified that when the taller assailant displayed the pistol, her attention was immediately drawn to him. She did not see the second individual (appellant) discharge the shotgun. When the individuals left the store, she only saw their backs.

Appellant's counsel clearly attempted to impeach Fletcher by showing that the assailants were in the store for a very brief period of time. The individual identified as appellant was partially concealed by a much taller party. Lastly, appellant showed that the witness' attention was primarily focused on the individual with the revolver. This cross-examination was clearly an attempt to impeach Fletcher's identification testimony by showing that she could not have adequately viewed the individual she identified as appellant.

The record further reflects that during a pretrial suppression hearing, Fletcher was shown a group of photographs from which she had earlier made an out-of-court identification of appellant. On cross-examination, she was asked to pick out the photograph which she had pointed out to Carlin. Appellant's picture was the third picked out of the photo spread during this pretrial hearing.

During trial on the merits, Fletcher was cross-examined concerning the testimony she gave at the suppression hearing. The record reflects the following exchange between appellant's counsel and the witness:

"Q. Now, do you recall that prior to your testifying in front of the jury, we had a hearing where the jury wasn't here; do you recall that?

"A. Oh, yes.

"Q. This morning?

"A. Yes.

"Q. And you recall that I showed you six color pictures. Six pictures of six different men; do you recall that?

"A. Yes.

"Q. Do you recall that you told me that those—to the best of your knowledge those were the same photos

that had been shown to you by the police officer earlier? Do you recall that?

"A. (Witness nods.)

"Q. You have to speak up so she can get it down.

"A. Yes.

"Q. Once again, please tell me if I'm wrong or am I giving any one the wrong impression. Did I not ask you to pick out the picture of Earnest Lee Smith out of those six pictures?

"A. Yes. But—but you misunderstood what I—what I said I'm—

"Q. No, no, I want to—Let me go through this and if I misunderstood something, please tell me. Is it fair to say—let me show you what has been marked for record purposes as Defendant's Exhibit Number 2. Is it fair to say that after I asked you to pick out the picture of Earnest Smith, that is the first picture you picked out?

"A. I—

"Q. I didn't mean to cut you off.

"A. Yes.

"Q. That was in fact the picture of the gentleman named of Billy Gene Carter; is that correct?

"A. But I thought I was going to shop around—look around but you picked it up.

"Q. Is it not fair to say that I laid out all six pictures in front of you and I then asked you to pick out the picture of Earnest Smith and stood back, and many seconds passed and you yourself, not I, but you yourself did pick out that picture of Mr. Carter; is that not correct?

"A. I thought I would, you know, look first, you know.

"Q. Did I—

"A. You thought I was going to pick that up.

"Q. You think I rushed you to pick out Mr. Carter's picture or tried to in-duce you to pick out Mr. Carter's picture? Do you think I was unfair to you in any way? If so, tell me.

"A. That's all right.

"Q. Now, is it not true that that is the second picture you picked out?

"A. I'm just moving them around. I thought I was picking them up.

"Q. Are you stating you did not actually pick that picture up?

"A. No—

"Q. Do you not recall picking the picture up and it fell down on the floor and I picked it up for you?

"A. I was going to look when they brought them in. I looked around.

"Q. You did actually—go on, I didn't mean to—

"A. I thought I picked that one. I'm going to look around first.

"Q. Okay. I see. That's fair enough. I misunderstood you. That was a picture of W. C. Drayden, I believe the record will reflect. The third picture you picked out was that picture; is that correct?

"A. Yes."

On redirect, the witness testified that she was merely viewing the first two pictures she picked up during the suppression hearing.

In the recent case of *Johnson v. State*, Tex.Cr.App., 583 S.W.2d 399, the question presented herein was before this Court. There it was stated:

"Johnson contends that Officer Olivia Escobedo, who was present at the pretrial photo spread, should not have been allowed to bolster S. J.'s unimpeached identification testimony by testifying that S. J. had identified appellant's picture. S. J. was vigorously cross-examined concerning her identification of Johnson. The State may bolster an identification witness' testimony when that identification is challenged by cross-examination."

The holding in *Johnson* appears consistent with earlier holdings of this Court. In *Smith v. State*, 520 S.W.2d 383, 384 the

defendant's cross-examination of the shooting victim elicited testimony that the victim had never seen the defendant before the day of the shooting and did not know what the defendant was wearing or whether the defendant had any kind of facial hair on the day in question. There it was held that the testimony of the officer that the witness identified the defendant about five months after the shooting was admissible by reason of defendant's attempt to impeach the victim.

In *Proctor v. State*, 503 S.W.2d 566 the defendant attempted to impeach the eyewitness by showing that the witness did not know whether or not he had a mustache or whether the defendant was on the right or left side of the police lineup. There it was held that *Lyons v. State*, Tex.Cr.App., 388 S.W.2d 950 was distinguishable since the defendant had attempted to impeach the State's witness relative to his identification of defendant in the lineup. In light of defendant's attempt to impeach this Court held it was not error to admit testimony of the officer who conducted the lineup that the witness had identified the defendant in such lineup. See also *Beasley v. State*, 428 S.W.2d 317; *Turner v. State*, Tex.Cr.App., 486 S.W.2d 797; *Frison v. State*, Tex.Cr. App., 473 S.W.2d 479.

The testimony set out above in the instant case reflects that appellant conducted a vigorous cross-examination of the witness in an effort to impeach her identification testimony. Under the authorities heretofore cited, it was then permissible for the State to show that the witness had made a prior out-of-court identifications. Appellant not only cross-examined the witness as to identification, he succeeded in eliciting testimony from her that her opportunity to view appellant was limited and that her attention was focused on appellant's companion who held the gun. While the witness explained her testimony on redirect, appellant showed on cross-examination that she had picked out a picture other than that of appellant when she was asked to identify appellant in a picture lineup in a hearing out of the presence of the jury.[1] If not impeached, the testimony of the identification witness was clearly undermined and clouded by appellant's cross-examination. The authorities heretofore cited dictate that the court did not err in allowing the State to bolster the testimony of the identification witness by Carlin's testimony concerning the out-of-court identification.

We find no error in the trial court overruling appellant's objection to Carlin's testimony. Appellant's fourth ground of error is without merit.

The judgment is affirmed.

CLINTON, J., dissents to the overruling of Ground of Error No. 4.

---

1. These matters were vigorously urged by appellant's counsel during argument of the guilt-innocence stage of the trial.