**Opinion issued July 10, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00504-CR

————————————

**TORRENCE RENARD IVY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 434th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 11-DCR-056582A**

---

## MEMORANDUM OPINION

The indictment charged appellant Torrence Renard Ivy with aggravated assault with a deadly weapon and the re-indictment alleged an enhancement for a prior felony conviction for sexual assault in 1989. The jury found Ivy guilty, found the enhancement allegation true, and assessed his punishment at 55 years'

confinement in prison. On appeal, Ivy complains of several evidentiary rulings, of charge error, of the trial court's improper comments, and of the trial court's rulings during closing argument. Finding no error, we affirm.

## Background

The complainant, Albert Dussette, testified at trial that Ivy owed him money for cocaine that Ivy had recently purchased from Dussette. On the morning of the incident, Ivy asked Dussette for change for a fifty-dollar bill. Unbeknownst to Dussette, the fifty-dollar bill that Ivy gave him was a counterfeit. Later that day, Ivy used another counterfeit fifty-dollar bill to pay Dussette the money he owed him.

Dussette testified that he suspected the fifty-dollar bills were counterfeit. Dussette made Ivy go with him and another man who lived with Dussette, John Lewis, to a nearby store to have the store clerk examine one of the bills. Dussette testified that the clerk checked the bill with a "highlighted" pen and determined that it was a ten-dollar bill with a fifty-dollar bill copied on top of it.

Dussette testified that he and Ivy argued outside Dussette's house, in the car on the way to the store, and at the store, and that the argument became physical when they returned to Dussette's house. Dussette grabbed Ivy by the shoulder, slammed him against the wall, and was about to punch him, but instead told Ivy to replace the counterfeit fifty-dollar bills by 5:00 p.m.

Ivy returned to Dussette's house around 5:30 p.m. Dussette and Lewis were there, as was Andrea Thomas. Dussette testified that Lewis answered the front door and that Ivy told Lewis to "put [Dussette's] dog up" so that Ivy could come inside. Dussette testified that he told Lewis to "put the dog up" and then went to the door, where he saw Ivy take a firearm out of his pocket and start shooting. The first bullet hit Dussette in his shoulder. Dussette testified that he shut the door, but Ivy kept shooting through the door.

Lewis's testimony was consistent with Dussette's. Lewis testified that when he opened the front door, Ivy did not come in because he was scared of the dog, and that even after Lewis placed the dog in a back room, Ivy still would not enter. Lewis testified that Ivy was still outside the front door when Dussette went to the doorway. Lewis testified that he did not see a firearm in Ivy's hand because Dussette blocked his view of Ivy, but that he heard the shot fire from where Ivy was standing. Lewis testified that he started to turn and accidentally bumped Dussette, causing Dussette to hit the door, and the door to shut. Lewis testified that there were five or six shots total.

Thomas testified that she saw Ivy holding a firearm when Ivy was standing outside the front door and that she heard five shots total. Dussette, Lewis, and Thomas each testified that none of them had a weapon.

No firearm was found at the scene, but Officer S. Morton with the Houston Police Department testified that he found four shell casings outside the front door and one just inside the doorway.

Lewis and Dussette testified that they told the police that Ivy was the shooter. Officer Morton testified that Lewis and Thomas described Ivy as the suspect and Lewis supplied Ivy's address. Officer M. Rippy with the Houston Police Department testified that about four days after the shooting, he re-interviewed Dussette and Lewis to confirm the initial report and they again identified Ivy as the suspect.

### Accomplice Witness Rule

In his second point of error, Ivy contends that Dussette, Lewis, and Thomas were accomplices and that their uncorroborated testimony was the only evidence connecting him to the crime. Therefore, Ivy argues, his conviction violates the accomplice witness rule. TEX. CODE CRIM. PROC. ANN. art. 38.14.

An accomplice is a person who participates with the defendant in an offense by affirmatively acting to promote the commission of the offense with which the defendant is charged. *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). "And complicity with an accused in the commission of another offense apart from the charged offense does not make that witness's testimony that of an accomplice witness." *Id.* The critical question is whether there is sufficient

4

evidence in the record to support charging the witness alleged to be an accomplice with the same offense with which the defendant is charged. *Blake v. State*, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998).

Dussette, Lewis, and Thomas could be considered accomplices only if they participated in the commission of the charged offense *with* Ivy. *See Druery*, 225 S.W.3d at 498 ("An accomplice is someone who participates with the defendant . . . ."). There is no evidence that Dussette, Lewis, or Thomas performed any affirmative act to assist Ivy in committing the assault with a deadly weapon. *See id.* at 500 (holding that witnesses' mere presence at the scene of the crime does not render any an accomplice witness). Ivy argues that Lewis, Thomas, and Dussette were accomplices because they sold drugs together. But there is no evidence that Ivy conspired with Dussette, Thomas, and Lewis to sell drugs. Similarly, any alleged conspiracy involving Dussette, Lewis, and Thomas as drug sellers and Ivy as a buyer could not violate the accomplice witness rule. Ivy's use of counterfeit money was not in furtherance of their joint unlawful purpose, nor was Ivy's assault on Dussette. Therefore, Dussette, Thomas, and Lewis could not be charged with the charged offense—aggravated assault of Dussette. Accordingly, we hold that Dussette, Thomas, and Lewis were not accomplices.

## Cross-Examination

In his fourth point of error, Ivy contends that the trial court erred in refusing to allow him to adduce evidence through cross-examination to support his defense, which was that Lewis, Thomas, and Dussette conspired to frame Ivy. Ivy complains of 17 instances in which the trial court sustained the State's evidentiary objections. He also complains that the trial court made improper comments in making some of these rulings.

### A. Evidentiary Rulings

We review a trial court's decision to exclude evidence under an abuse of discretion standard. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). When a trial court denies a defendant the opportunity "to elicit certain, specific responses from [the] State's witness," error is preserved by (1) calling the witness to the stand outside the presence of the jury and asking specific questions or (2) making an offer of proof that demonstrates what questions would have been asked and the expected answers to those questions. *Koehler v. State*, 679 S.W.2d 6, 9 (Tex. Crim. App. 1984); *Stults v. State*, 23 S.W.3d 198, 203 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

Here, the topics on which Ivy sought to cross-examine generally related to Lewis and Thomas's use and sale of drugs and the violent nature of drug dealing. The apparent aim of the cross-examination was to persuade the jury that someone

other than Ivy—such as a drug dealer rival of Dussette's—may have been the shooter. The State objected on various grounds and the record reflects that the trial court sustained each of these objections. The record does not reflect, however, that Ivy preserved error on any of these rulings by making an offer of proof or bill of exception. Accordingly, we hold that Ivy's claim that the trial court improperly denied him the opportunity to elicit responses to these questions was not preserved for appeal. *See Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) (stating that to preserve error regarding trial court's decision to exclude evidence, complaining party must comply with Rule of Evidence 103(a) by making an offer of proof setting forth the substance of the proffered evidence); *Watts v. State*, 371 S.W.3d 448, 464 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (concluding appellant failed to preserve error and stating that "[w]ithout an offer of proof, [the appellate court] decline[s] to speculate about the nature of the [witness's] excluded testimony.").

## B.    Trial court's comments

Ivy also argues that the trial court, in making its evidentiary rulings, commented on the weight of the evidence. Ivy does not specify which comments were improper, but the record reveals that in 15 of the 17 rulings about which Ivy complains, the trial court said only, "sustained." This does not constitute a comment on the weight of the evidence. *See Anderson v. State*, 831 S.W.2d 50, 53

7

(Tex. App.—Fort Worth 1992, pet. ref'd) (holding that sustaining an objection by saying "sustained" without further comment is not comment on weight of evidence and does not "benefit the State or prejudice [the defendant]") (citing *Smith v. State*, 595 S.W.2d 120, 123 (Tex. Crim. App. [Panel Op.] 1980) and *Sharpe v. State*, 648 S.W.2d 705, 706 (Tex. Crim. App. 1983)).

The trial court elaborated on two of the 17 complained-of rulings. In one instance, Ivy's counsel asked Dussette: "And if you had a dispute with one of them, you would have to protect them, wouldn't you? . . . Because they enforce their own laws." The State objected on relevance and vagueness, and the trial court said: "sustained a vague question." In the other instance, Ivy's counsel asked Officer Rippy: "[T]hey're the sort of people that will say or do anything they want to get what they want; is that right?" The State objected on the grounds that the question called for speculation, and the trial court said, "Unless you can lay some foundation for him having an opinion."

Because Ivy did not object to either of these comments, reversal is proper only if the error was fundamental error. *See Powell v. State*, 252 S.W.3d 742, 744 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (When no objection regarding an improper judicial comment is made at trial, "a defendant waives error unless the error is fundamental—that is, the error creates egregious harm."). A trial court's comments do not constitute fundamental error unless they rise to "such a level as

8

to bear on the presumption of innocence or vitiate the impartiality of the jury." *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). Ivy does not articulate how these two statements harmed him, and we conclude that neither of them bear on the presumption of innocence or vitiate the impartiality of the jury. We, therefore, conclude that the trial court's statements were not fundamental error.

We overrule Ivy's fourth point of error.

### Limiting Instruction on Extraneous Offense

In his first point of error, Ivy contends that the trial court erred in refusing to include in the charge a portion of his requested limiting instruction on an extraneous offense. Ivy does not specify which extraneous offense evidence warranted a limiting instruction.

Rule 105 of the Texas Rules of Evidence provides that: "When evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; but, in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal." TEX. R. EVID. 105(a). "[A] limiting instruction concerning the use of extraneous offense evidence should be requested, and given, in the guilt-stage jury charge only if the defendant requested a limiting instruction under Rule

9

of Evidence 105 when the evidence was first admitted." *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007); *see also Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001); *McGowan v. State*, 375 S.W.3d 585, 593 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). Here, Ivy did not request a limiting instruction when extraneous offense evidence was admitted. Accordingly, we hold that the trial court did not err by failing to include a limiting instruction in the jury charge. *See Delgado*, 235 S.W.3d at 251; *McGowan*, 375 S.W.3d at 593.

We overrule Ivy's first point of error.

## Improper Jury Arguments

In his sixth and seventh points of error, Ivy contends that the prosecutor made improper closing arguments during the guilt phase of the trial because the prosecutor (1) misstated the record and (2) misstated the law.

## A.    Applicable Law and Standard of Review

"The law provides for, and presumes, a fair trial free from improper argument by the State." *Thompson v. State*, 89 S.W.3d 843, 850 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (citing *Long v. State*, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991)). The approved areas of jury argument are (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to the argument of opposing counsel, and (4) plea for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000); *Andrade v. State*, 246 S.W.3d

10

217, 229–30 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).  Wide latitude is allowed in drawing inferences from the evidence, so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith.  *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).  In examining challenges to a jury argument, a court considers the remark in the context in which it appears.  *Id.*

To complain on appeal about an improper jury argument, a defendant must object at trial and pursue his objection to an adverse ruling.  *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *Temple v. State*, 342 S.W.3d 572, 603 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013).  A party may present on appeal a complaint that a jury argument was improper only if the record shows that (1) he timely and properly objected to the trial court and (2) the trial court (a) overruled the objection, either expressly or implicitly, or (b) refused to rule on the objection, and the party objected to the refusal.  TEX. R. APP. P. 33.1(a); *Gutierrez v. State*, 36 S.W.3d 509, 510–11 (Tex. Crim. App. 2001); *Cockrell*, 933 S.W.2d at 89.  A trial court implicitly rules on a matter if "its actions or other statements otherwise unquestionably indicate a ruling."  *Gutierrez*, 36 S.W.3d at 511 n.1 (quoting *Rey v. State*, 897 S.W.2d 333, 336 (Tex. Crim. App. 1995)).  We review a trial court's ruling on improper jury arguments for an abuse of discretion.  *Lemon v. State*, 298 S.W.3d 705, 707 (Tex. App.—San Antonio 2009, pet. ref'd).

11

## B.     Analysis

In his seventh point of error, Ivy complains that the prosecutor, in closing, made the following improper comment:

> There was no evidence that you heard from the stand from any of these witnesses, no evidence at all that there was any bad turf rival going on.  There's no evidence that there was any—

Ivy objected, "Objection your Honor, that misstates the record with regard to testimony of Rippy."   The trial court said, "The jury heard the testimony and they'll know whether or not something misstated the record.  So I'll leave it to their discretion."  Our court previously has concluded that this type of response is not a ruling.  *See Gonzalez v. State*, 337 S.W.3d 473, 483–84 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (holding that appellant waived any error by failing to obtain a ruling when he objected and trial court, in response, said, "Ladies and gentlemen, you are the triers of fact. You are the judge.  And . . . you have heard the evidence and will make your own decision."); *Mayberry v. State*, 532 S.W.2d 80, 84 (Tex. Crim. App. 1976) (op. on reh'g) ("[j]ury will recall the evidence" does not preserve error); *Schneider v. State*, No. 01-04-00868-CR, 2005 WL 2995824, at *7 (Tex. App.—Houston [1st Dist.] Nov. 3, 2005, pet. ref'd) (holding appellant may not complain about jury argument because trial court did not rule on appellant's objection and instead instructed jury to "recall the testimony that you heard here in trial.  That's the evidence, what you heard in the testimony.").

Because Ivy did not obtain an adverse ruling on this objection, he did not preserve his challenge to this comment. *See* TEX. R. APP. P. 33.1. Accordingly, we overrule his seventh point of error.

In his sixth point of error, Ivy contends that the prosecutor's comment in closing improperly misstated the law. The prosecutor said:

> When I read the indictment to you at the beginning of the trial, some of the including words in that indictment were against the peace [and] dignity of the State, against the peace and dignity of the State of Texas and the community. And that's very important in this case because we're here to seek a guilty verdict against Mr. Ivy, not because he put a bullet through a drug dealer, but because he shot multiple times into a house occupied by multiple people including a pregnant woman and two children. This could have been a lot worse, it could have been a lot worse. And if someone was seriously hurt or someone were killed, you're darn right we're going to come in here and prosecute for another crime.

Ivy objected, "[T]hat's a speculative argument beyond the reasonable inferences and reasonable deductions. People aren't supposed to be punished for what could have happened or found guilty because of what could have happened." The trial court responded: "This is final argument, overruled."

Ivy contends that the prosecutor "wrongfully asked the jury to find [him] guilty for dangerous or reckless conduct, a different crime than the crime charged," because deadly conduct was not included in the charge and he was "never given any notice that he was being tried for dangerous/reckless conduct." Ivy also argues

13

that the argument was improper because no children were home at the time of the shooting.

Arguments that invite speculation are not necessarily improper if they are reasonable deductions from the evidence. *See Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984) (holding that it was proper for the State to ask the jury to consider what the defendant would have done if the police had not arrived); *Gonzales v. State*, 831 S.W.2d 491, 494 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd) (holding that it was proper for prosecutor to ask jury to consider what would have happened if defendant had been two steps closer to victim when he thrust a knife toward victim); *Gonzales v. State*, 807 S.W.2d 830, 836 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd) (prosecutor properly asked jury to consider what would have happened if grandmother and aunt of deceased had arrived at murder scene five minutes earlier).

Here, because the evidence showed that several people were present when Ivy fired multiple shots, it was likewise a reasonable deduction from the evidence to argue that others could have been shot. *See Hudson*, 675 S.W.2d at 511; *Gonzales*, 831 S.W.2d at 494; *Gonzales*, 807 S.W.2d at 836. Accordingly, we hold that the trial court did not err by overruling Ivy's objection to the prosecutor's comment and overrule Ivy's sixth point of error.

**Evidence of Prior Convictions Admitted During Punishment Phase**

In his third point of error, Ivy contends that the trial court erred in admitting, during the punishment phase of the trial, judgments and other documents relating to Ivy's prior convictions and that the State failed to properly link Ivy to the prior convictions.

### A. Standard of Review and Applicable Law

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) the prior conviction exists, and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). "No specific document or mode of proof is required to prove these two elements." *Id.* "There is no 'best evidence' rule in Texas that requires the fact of a prior conviction be proven with any document, much less any specific document." *Id.* The State may prove these two elements by documentary proof, such as a judgment, that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted. *Id.* at 922.

The trier of fact considers the totality of the evidence admitted and attempts to fit the evidentiary pieces of the puzzle together, weighing each piece's credibility. *Id.* at 923. "Regardless of the type of evidentiary puzzle pieces the State offers to establish the existence of a prior conviction and its link to a specific

defendant, the trier of fact determines if these pieces fit together sufficiently to complete the puzzle." *Id.* If the two necessary elements "can be found beyond a reasonable doubt, then the various pieces used to complete the puzzle are necessarily legally sufficient to prove a prior conviction." *Id.*

**B. Analysis**

During the punishment phase of the trial, the State offered exhibits to prove its enhancement allegation[1]—a prior conviction for the felony offense of sexual assault, cause number 535777, in Harris County on August 28, 1989—as well as to prove Ivy's other prior convictions. The State offered: (1) a certified copy of the 1989 sexual assault judgment, (2) a certified copy of the judgment for Ivy's 1982 convictions for kidnapping, aggravated kidnapping, aggravated rape, and rape, (3) a certified copy of the judgment for Ivy's 2007 convictions for felony possession of a weapon and evading arrest, (4) Harris County Sheriff's Department records of Ivy's 1982, 1989, and 2007 arrests, which included fingerprints, and (5) a document containing Ivy's fingerprints taken the day of the punishment phase of the trial. Additionally, Kim Oreskovich, a fingerprint comparison expert, testified that the fingerprints from the Harris County Sheriff's Department records matched the fingerprints taken from Ivy that day.

---

[1]     Ivy pleaded "not true" to the enhancement paragraph.

When the State moved to admit the exhibits, Ivy objected to the certified copies of the judgments because they did not contain fingerprints. The State responded that those exhibits were self-authenticating because they were certified copies of judgments and relevant because they matched Ivy's fingerprints from the Harris County Sheriff's Department records. The trial court admitted the exhibits.[2]

On appeal, Ivy contends that because there is "no handwriting expert, no photograph, no physical description, and no stipulation independently linking" the judgments for Ivy's 1989 and 1982 convictions to the Harris County Sheriff's Department records containing the fingerprints, "the alleged nexus is inadequate."[3] We construe Ivy's argument as a challenge to the legal sufficiency to support a finding that the State's enhancement was true.[4]

The certified copies of the judgments for Ivy's 1982 and 1989 convictions contain Ivy's name, date of arrest, charged offense, plea, and the judicial cause number. The Harris County arrest records for Ivy's 1982 and 1989 charges

---

[2]   Even after the trial court admitted all six exhibits, Ivy continued to object. Ivy objected to the State's late disclosure of some publicly available documents, even though the State had notified Ivy it would use them. Ivy also objected to the admission of all six exhibits because they were (1) inflammatory and would be used to prejudice the jury, (2) cumulative, unnecessary, irrelevant, (3) do not establish adequate nexus to this case, (4) not the "best evidence," and (5) inconclusive. The trial court overruled each of Ivy's objections and admitted the six exhibits.

[3]   In his brief, Ivy does not complain about the admission of his 2007 arrests and convictions.

[4]   It appears that Ivy is also asserting evidentiary errors. But to the extent that he is, he does not discuss specific exhibits and does not argue harm, and thus waives this issue due to inadequate briefing. *See* TEX. R. APP. P. 38.1(h).

17

contains his name, date of birth, social security number, date of arrest, charged offense, judicial cause number, and fingerprints. Oreskovich testified that Ivy's fingerprints matched those from the Sheriff's Department arrest records. Based on the totality of the State's admitted evidence, we hold that the State produced sufficient evidence to prove beyond a reasonable doubt that Ivy was linked to the prior conviction from 1989—the offense alleged in the enhancement paragraph— and the prior convictions from 1982. *See Flowers*, 220 S.W.3d at 921 (holding that the objected-to certified copy of a computer printout from county clerk setting out prior DWI conviction with cause number and appellant's name, date of birth, address, and social security number matching exhibit containing appellant's official driver's license record was sufficient to prove beyond a reasonable doubt the existence of appellant's prior DWI conviction); *Orsag v. State*, 312 S.W.3d 105, 115 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (factfinder considers totality of evidence to determine whether State proved prior conviction beyond a reasonable doubt); *Blank v. State*, 172 S.W.3d 673, 675 (Tex. App.—San Antonio 2005, no pet.) (prior conviction may be proved by certified copies of judgment and sentence, authenticated records from correctional institution including fingerprints, and expert testimony matching them to the defendant). Accordingly, the evidence is legally sufficient to prove the prior convictions and enhancement allegation.

We overrule Ivy's third point of error.[5]

## Request to Reopen Case During State's Closing Argument

In his fifth point of error, Ivy contends that the trial court erred in denying his request during the State's closing argument druing the punishment stage to reopen his case so that Ivy could testify.

### A. Standard of Review and Applicable Law

The trial court "shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." TEX. CODE CRIM. PROC. ANN. art. 36.02 (West 2007). This means that the trial court "should reopen the case if the evidence would materially change the case in the proponent's favor." *Peek v. State*, 106 S.W.3d 72, 79 (Tex. Crim. App. 2003). We review a trial court's refusal to reopen the case for an abuse of discretion. *Id.* at 75.

---

[5] Ivy further contends that the trial court erred in admitting these exhibits because "there is no evidence that [he] was provided or notified pretrial of how the State intended to prove the required elements of enhancement." Ivy argues that the indictment and State's pretrial notice of intent to introduce evidence of prior convictions did not give notice of the "required element of the offenses of link to [him]." But the State's pretrial notice listed the four prior felony convictions and included the county, charged offense, cause number, conviction date, sentence, and court name and Ivy fails to cite any authority to support his argument that the State needed to notify him how it would prove his prior convictions. *See* TEX. R. APP. P. 38.1(h), (i). The State also disclosed its fingerprint expert as a witness. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(b) (West Supp. 2013).

**B. Analysis**

During the State's closing argument during the punishment phase, Ivy passed a note to his counsel stating that he wished to testify. At a bench conference, Ivy's counsel moved to reopen and the trial court denied Ivy's request because the defense had rested.

Ivy contends that a defendant has an absolute right to testify on his own behalf, but Ivy proffered no evidence to demonstrate—and did not explain to the trial court—how his testimony would materially change the case in his favor. Because Ivy failed to make this showing, we hold that the trial court did not abuse its discretion in denying Ivy's request to reopen the case. *See Landrian v. State*, No. 01-05-00697-CR, 2009 WL 1562844, at *9 (Tex. App.—Houston [1st Dist.] May 29, 2009, pet. ref'd) (mem. op., not designated for publication) (holding trial court did not abuse its discretion in denying appellant's request to reopen the evidence because appellant's proffered testimony would not have materially changed outcome of case in appellant's favor); *Bird v. State*, No. 08-05-00016-CR, 2006 WL 304554, at *7 (Tex. App.—El Paso Feb. 9, 2006, pet. dism'd) (mem. op., not designated for publication) (holding trial court did not abuse its discretion in not allowing appellant to reopen where record did not reflect what testimony would have been given). Accordingly, we overrule Ivy's fifth point of error.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.

Do Not Publish.  TEX. R. APP. P. 47.2(b).