**Don Melton LAIRD, Jr., Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–82–134–CR.**

Court of Appeals of Texas,
Fort Worth.

April 20, 1983.

Quillin & Thompson and Larry M. Thompson, Fort Worth, for appellant.

Tim Curry, Dist. Atty. and Don Hase, Asst. Dist. Atty., Fort Worth, for State.

Before FENDER, C.J., and BURDOCK and SPURLOCK, JJ.

## OPINION

SPURLOCK, Justice.

Don Melton Laird, Jr., appellant, was charged with aggravated rape. V.T.C.A. Penal Code, sec. 21.03. Laird pled not guilty. The jury found Laird guilty and assessed his punishment at 20 years in prison. He raises four grounds of error. They are:

1. The trial court committed error in permitting the State to improperly bolster a witness whose testimony was unimpeached;

2. The court erred in not sustaining Laird's objection to an improper jury argument;

3. That a pre-trial identification process (photo spread) was so suggestive and conducive to mistaken identification as to deny Laird due process; and

4. Laird was required to smile at the jury in violation of his constitutional right to remain silent.

We affirm.

On January 4, 1982 appellant was seen in a K-Mart store, carrying a baby. He asked an employee (Boland) for the name of another employee (the complainant). Boland refused to tell him complainant's name. This was around 3:30 to 4:00 p.m.

The complainant got off work and left. She later returned to pick up a prescription for her child. On the way into the store, Laird drove his car up beside her to ask if she wanted to earn some money. She ignored him and walked into the store. She complained to fellow employees about the event, and discussed with them whether or not she acted like a prostitute. She left the store, and started to walk away. Laird pulled up beside her in the same copper-colored car, and pointed a gun at her to force her into the car. She noticed an infant in the back seat.

Laird drove to a secluded area and forced her to perform oral sex on him. Then he raped her. She testified she consented because of her fear of the pistol and Laird's threat to kill her. He returned her to the K-Mart parking lot, let her out and left. She noted the license number of the car, entered the store and reported what happened to the manager and later the police.

The police investigated the offense, and discovered the plates belonged to an auto registered in El Paso. The officer (Briggs) looked for the auto on January 5, and on January 6, found a car matching the description of the suspect car, including the reported license plate with two of the letters transposed. He called in the location, and followed Laird when he came out of the house. Briggs stopped Laird for a traffic offense, and while checking it out, another police unit came on the scene. Authorization for an arrest by warrant was issued over the radio.

As he was being arrested and handcuffed, Laird mentioned he had an infant in the car. As Briggs was getting the child out,

he noticed in view, what looked like a .22 caliber "pistol", stuffed down in the driver's seat. At the trial, the pistol was admitted without objection. The "pistol" was a "blank" starters pistol, but Briggs testified he wouldn't have been able to tell it was a blank gun if pointed at him in the dark.

Laird's defense was alibi. His parents and a neighbor testified about his whereabouts from around 4:45 p.m. to 7:00 p.m. on the 4th of January. In response, the State called two children who testified that Laird also drove up to them the afternoon of January 4, near a Nazarene church parking lot and asked them if they wanted to make some money.

The witness Boland, one of the two children, and the complainant all identified Laird in court.

■ Laird complains in his first ground of error that the court permitted a police officer (Place) as a witness for the State to bolster the complainant's identification of Laird by telling the jury she had earlier picked his photo from a spread. The victim positively identified Laird in court, but was vigorously cross-examined about previously stated inconsistencies. The testimony more correctly stated was that the witness Place testified complainant had been able to identify one of the four photos shown her. Her identification was a basis that he, Officer Place, used to obtain a warrant for arrest.

Laird relies on *Lyons v. State*, 388 S.W.2d 950 (Tex.Cr.App.1965), to support his argument that others may not bolster the unimpeached testimony of an identification witness who identifies a defendant at trial, and states she earlier picked him out. More recently, though, in *Johnson v. State*, 583 S.W.2d 399 (Tex.Cr.App.1979), the Court of Criminal Appeals has held: "[t]he State may bolster an identification witness' testimony when that identification is challenged by cross-examination." *Johnson*, p. 403–404.

In *Smith v. State*, 595 S.W.2d 120 (Tex.Cr.App.1980), the Court of Criminal Appeals has held it is not error for a police officer to testify about a witness' pre-trial

identification where a defendant attempts to impeach the testimony of an eyewitness. *Smith*, p. 126. Here we have a clear record of the vigorous attempts of Laird to discredit all aspects of the complainant's identification of him. This meets with the modern reasoning of the Court of Criminal Appeals in 1982 in the case of *Wilhoit v. State*, 638 S.W.2d 489 (Tex.Cr.App.1982), where Judge Clinton has stated (page 495), that *Lyons, supra,* has been so "weakened by explanations and distinctions that it is futile for an accused to invoke it if he has merely 'attempted to impeach an eyewitness.'"

The first ground of error is overruled.

Laird argues that the prosecutor misquoted from the record and quoted facts not in the record, and he was greatly prejudiced by the improper jury argument.

The State had called two girls to testify about a man, matching Laird's description, driving a car similar to his, stopping them the afternoon of January 4th near a Nazarene church to ask them if they wanted to make some money. This is similar to the first approach Laird used on the complainant (before he used the pistol to get her attention).

The specific language complained of was:

MR. BAYS (State's counsel): Couple that with the fact that this offense against these two little girls occurred not three or four blocks from where the Defendant lives at approximately the time that he came home and saw his parents—

MR. EAKMAN (Appellant's counsel): I object. . . .

THE COURT: Sustained.

MR. EAKMAN: Ask the Court to have the jury to disregard that statement.

THE COURT: [Y]ou are instructed to disregard the statement as to the number of blocks . . .

Laird argues that such argument was so improper and prejudicial that his right to a fair trial was denied.

■ We have examined the record and find that the remarks were not prejudicial. The jury could decide from the testimony concerning the Nazarene church that the contact with the girls was near Laird's home.

Not being so prejudicial that an instruction to disregard, after proper objection is made will cure the same, we conclude the argument was harmless. State's counsel in fact noted that the testimony showed that the parking lot of the Church of the Nazarene was in the same general neighborhood as Laird's home, and no objection was made to this comment made immediately after the ruling above referred to.

■ Laird did not request a mistrial at the time of objection, and received all relief he did request. There is no ruling of the court adverse to him for us to review. The alleged error, not being fundamentally prejudicial, is waived because Laird requested no mistrial. *See Kennedy v. State*, 520 S.W.2d 776 (Tex.Cr.App.1975); and *see Romo v. State*, 593 S.W.2d 690 (Tex.Cr.App. 1980). Ground of error two is overruled.

In ground of error three, Laird complains of the pre-trial photo spread identification of him conducted by the police for the complainant. Specifically he complains: 1. the complainant was hypnotized before the photo spread; 2. added a moustache to her description of Laird a day after the rape; 3. that Laird's picture was from 4 years previously; and 4. he was by far a larger man than the other three depicted. The court at the time conducted a hearing to determine if the complainant's testimony would be tainted by an earlier identification conducted in a manner prejudicial to Laird. *See Martinez v. State*, 437 S.W.2d 842 (Tex.Cr. App.1969).

In this case after learning the name of Laird (from the discovery of the suspect car at his home), Officer Place pulled a file picture of him to place with three other men. The complainant testified she couldn't tell the weights of the individuals because they were sitting down (Laird is 6'3" tall and weighs about 300 lbs.).

Place had not told her they had arrested the rapist, nor suggested to her which photo to select. He testified he told her the ra-

pist's photo "may or may not" be among the four. Three of the four had some facial hair. The complainant testified that her in-court identification was not affected by her viewing the photo and she had recognized Laird previously in the hall before court.

Appellant relies on *Proctor v. State,* 465 S.W.2d 759 (Tex.Cr.App.1971) and *Gonzales v. State,* 501 S.W.2d 644 (Tex.Cr.App.1973).

We find the rule in *Jackson v. State,* 628 S.W.2d 446 (Tex.Cr.App.1982), to be applicable here:

"A defendant who contends on appeal that a trial court erred in allowing an in court identification of him by a complaining witness has a .difficult and heavy burden to sustain, for unless it is shown by clear and convincing evidence that a complaining witness' in court identification of a defendant as the assailant was tainted by improper pre-trial identification procedures and confrontations, the in court identification is always admissible.",

*Jackson, supra,* at page 448.

■ We do not find the procedure followed here to show by clear and convincing evidence that the . witness' identification was tainted. The use of the photo came about because of the license number and description of the auto, and general description of the appellant furnished police. After determining who lived at the house where the car was parked the officer pulled a photo of Laird from the police files. Ground of error three is without merit, and overruled.

In ground of error four, Laird complains that the court erred in compelling him to smile for the jury, to show his teeth and thus be compelled to violate his right to remain silent.

■ We do not hold that requiring a defendant to smile to exhibit his teeth, is any violation of his right to remain silent.

Laird complains this act is testimonial in nature, and requires him to furnish testimony against himself. He cites as his whole authority two cases. They are *Bellis v.*

*United States,* 417 U.S. 85, 88, 94 S.Ct. 2179, 2183, 40 L.Ed.2d 678 (1974), and *Davis v. Israel,* 453 F.Supp. 1316 (1978); citing *Null v. Wainwright,* 508 F.2d 340 (5th Cir.1975).

We have examined these cases and find they are not on the issue here considered. The following cases reflect instances where requested action has been held not to be a violation of the right against self-incrimination:

a. Involuntary removal of blood from defendant in DWI cases. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

b. Requiring a handwriting sample. *Olson v. State,* 484 S.W.2d 756 (Tex.Cr.App. 1969).

c. Requiring the defendant to speak in the presence of a witness. *McInturf v. State,* 544 S.W.2d 417 (Tex.Cr.App.1976).

d. Requiring the defendant to hold up his hand to show part of a thumb missing. *Whitlock v. State,* 170 Tex.Cr. 153, 338 S.W.2d 721 (1960).

e. Requiring the defendant to give an example of his handwriting for comparison in a theft (forgery) case. *Moulton v. State,* 486 S.W.2d 334 (Tex.Cr.App.1972).

The testimony from three witnesses was that Laird had bad teeth. This was an identifying issue, like that of height, weight, color of hair, sex and other normal human characteristics. As an identifying physical characteristic it is outside the protection of the Fifth Amendment to the Constitution of the United States. *See Moulton, supra.*

To require the defendant to smile to the jury is no more than permitting the jury to view the whole person of defendant during the course of the trial. We find no cases squarely on this issue but here conclude it is not a violation of a defendant's right against self-incrimination to require him to smile, or otherwise open his mouth to let the jury view the status of his teeth. This act is not testimonial.

Ground of error four is overruled.

The judgment is affirmed.