COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-01-037-CR
  
  
THEODORE SARON WILLIAMS                                                APPELLANT
  
V.
  
THE STATE OF TEXAS                                                                  STATE
  
  
------------
 
FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
 
------------
 
OPINION ON REMAND
 
------------
        Appellant 
Theodore Saron Williams was convicted by a jury for the offense of felony 
driving while intoxicated. Upon consideration of the case on remand from the 
Texas Court of Criminal Appeals, we will reverse and remand.
Procedural Background
        In 
an opinion dated April 11, 2002, we overruled all four of Appellant’s issues 
and affirmed the trial court’s judgment. Williams v. State, 74 S.W.3d 
902, 905 (Tex. App.—Fort Worth 2002), rev’d, 116 S.W.3d 788 (Tex. 
Crim. App. 2003). In his first two issues,[1] 
Appellant argued that the trial court abused its discretion in denying his 
request to provide the jury with a personal demonstration of his speaking 
ability and the physical condition of his mouth at the time of his trial without 
subjecting himself to cross-examination. Id. at 903. Appellant argued 
that such evidence would show that his speech normally sounds slurred because he 
is missing many of his teeth.  We addressed Appellant’s first two issues 
in tandem and upheld the trial court’s ruling. Id. at 903-04.
        Thereafter, 
Appellant filed a petition for discretionary review. On October 2, 2002, the 
court of criminal appeals granted two of the three grounds enumerated in 
Appellant’s petition for discretionary review. Williams v. State, No. 
1015-02 (Tex. Crim. App. Oct. 2, 2002) (granting on grounds one and two) 
(available at http://www.cca.courts.state.tx.us/opinions/10022002hd.htm.)  Appellant presented his first ground for 
discretionary review as follows: “Whether defendants may personally provide 
voice exemplars or other demonstrations to the jury as part of their defense, 
without fear of cross-examination by the State?”[2]  
The Texas Court of Criminal Appeals reversed solely on Appellant’s first 
ground, holding “that a voice exemplar is not testimonial and therefore does 
not waive a defendant’s right to be free from self-incrimination.” Williams, 
116 S.W.3d at 790. Notably, the court did not specifically reference “other 
demonstrations,” such as showing the jury the condition of an appellant’s 
mouth, as Appellant requested at trial. The court then remanded the case to us 
“for proceedings consistent with this opinion.” Id. at 793.
Scope of Appeal on Remand
        As 
the court of criminal appeals recognized in Carroll v. State, “The 
Rules of Appellate Procedure . . . do not specifically address the scope of an 
intermediate appellate court’s review following a remand from [the Texas Court 
of Criminal Appeals].” 101 S.W.3d 454, 456 (Tex. Crim. App. 2003). In Carroll, 
however, the court held that “the courts of appeals are not limited on remand 
to deciding the pertinent point of error based solely on the explicit basis set 
out by this Court in a remand order.” Id. at 459. Accordingly, while 
the court of criminal appeals’s holding on Appellant’s petition for 
discretionary review pertains only to Appellant’s voice exemplar and does not 
specifically address his complaint as to the denial of his request to show the 
jury the condition of his mouth, we will reexamine our holding on the latter 
issue before turning to the question of whether Appellant was harmed by the 
trial court’s rulings.
        Appellant 
asserts in his second issue that the trial court erred in denying him the 
opportunity to show his mouth to the jury, which would have shown that he has no 
upper teeth and at least three missing lower teeth. He argues that this evidence 
would show what actually caused his speech to appear slurred in the videotape 
from the intoxilyzer room following his DWI arrest. In Laird v. State, we 
held that “it is not a violation of a defendant’s right against 
self-incrimination to require him to smile, or otherwise open his mouth to let 
the jury view the status of his teeth. This act is not testimonial.” 650 
S.W.2d 198, 202 (Tex. App.—Fort Worth 1983, pet. ref’d). Such evidence is 
not testimonial, “whether it is offered by the State or the defendant.” Williams, 
116 S.W.3d at 793; see Laird, 650 S.W.2d at 202. Accordingly, we now hold 
that a defendant who offers evidence of the physical condition of his or her 
mouth “does not waive his Fifth Amendment rights and does not subject himself 
to cross-examination.” Williams, 116 S.W.3d at 793; see Laird, 
650 S.W.2d at 202.
        We 
therefore conclude that the trial court abused its discretion in refusing 
Appellant’s request to permit him to provide the jury with a personal 
demonstration of his speaking ability and the physical condition of his mouth at 
the time of his trial without subjecting himself to cross-examination.
Analysis of Appellant’s 
Issues on Remand
        Because 
the trial court erred, we must conduct a harm analysis to determine whether the 
error calls for reversal of the judgment. See Tex. R. App. P. 44.2. Neither Appellant 
nor the State is required to prove harm from a trial court’s error; rather, it 
is our duty as the reviewing court to assess harm from the context of the error. 
Johnson v. State, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). It is 
unnecessary to decide whether the error was constitutional because, even under 
the less stringent non-constitutional harm standard, we conclude that the error 
was harmful. Therefore, assuming, but without deciding, that the error was not 
constitutional, we conduct a harm analysis under rule 44.2(b). Tex. R. App. P. 44.2(b) (stating any 
error that does not affect an appellant’s substantial rights must be 
disregarded); see Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 
1998) (op. on reh’g), cert. denied, 526 U.S. 1070 (1999); Coggeshall 
v. State, 961 S.W.2d 639, 642-43 (Tex. App.—Fort Worth 1998, pet. ref’d) 
(en banc).
        A 
substantial right is affected when the error had a substantial and injurious 
effect or influence on the jury’s verdict. Johnson, 43 S.W.3d at 3-4; King 
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. 
United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). The United 
States Supreme Court explained in Kotteakos:
 
[I]f one cannot say, with fair assurance, after pondering 
all that happened without stripping the erroneous action from the whole, that 
the judgment was not substantially swayed by the error, it is impossible 
to conclude that substantial rights were not affected. The inquiry cannot be 
merely whether there was enough to support the result, apart from the phase 
affected by the error. It is rather, even so, whether the error itself had substantial 
influence. If so, or if one is left in grave doubt, the conviction cannot 
stand.
 
328 U.S. at 765, 66 S. Ct. at 1248; see also Russell 
v. State, 113 S.W.3d 530, 549-50 (Tex. App.—Fort Worth 2003, pet. ref’d). 
According to the Supreme Court, “grave doubts” means that “in the 
judge’s mind, the matter is so evenly balanced that he [or she] feels himself 
[or herself] in virtual equipoise as to the harmlessness of the error.” Russell, 
113 S.W.3d at 550 (citing O’Neal v. McAninch, 513 U.S. 432, 435, 115 S. 
Ct. 992, 994 (1995)). “If the reviewing court is unsure whether the error 
affected the outcome, the court should treat the error as harmful, that is, as 
having a substantial and injurious effect or influence in determining the 
jury’s verdict.” Id.
        In 
assessing the likelihood that the error adversely affected the jury’s 
decision, we consider everything in the record, including all evidence admitted 
for the jury’s consideration, the nature of the evidence supporting the 
verdict, the character of the alleged error, and how the error might have been 
considered in connection with the other evidence. Morales v. State, 32 
S.W.3d 862, 867 (Tex. Crim. App. 2000); James v. State, 102 S.W.3d 162, 
179 (Tex. App.—Fort Worth 2003, pet. ref’d). We may also consider the 
State’s theory of the case, any defensive theories, closing arguments, and 
voir dire. Morales, 32 S.W.3d at 867; James, 102 S.W.3d at 179. 
Evidence of a defendant’s guilt, especially if it is overwhelming, is also a 
factor to be considered in conducting a harm analysis. Motilla v. State, 
78 S.W.3d 352, 358 (Tex. Crim. App. 2002). But as stated in Harris v. State:
 
[A] reviewing court in applying the harmless error rule 
should not focus upon the propriety of the outcome of the trial. Instead, an 
appellate court should be concerned with the integrity of the process leading to 
the conviction. . . . If the error was of a magnitude that it disrupted the 
[jurors’] orderly evaluation of the evidence, no matter how overwhelming it 
might have been, then the conviction is tainted. Again, it is the effect of the 
error and not the other evidence that must dictate the reviewing court’s 
judgment. 

790 S.W.2d 568, 587-88 (Tex. Crim. App. 1989); see 
also Russell, 113 S.W.3d at 550.
        Appellant 
was charged with felony driving while intoxicated on December 28, 1999. During 
trial, Appellant stipulated to two prior DWI convictions. According to the 
State’s evidence, he was pulled over after failing to signal and for driving 
in two lanes of traffic. When Officer Robert Young approached Appellant, he 
detected the odor of an alcoholic beverage coming from Appellant and his car. 
Officer Young testified that Appellant fumbled with his wallet and “had some 
slurred speech.” Officer Young asked Appellant to get out of his car, and 
Appellant did so, “us[ing] his hand on his vehicle to guide his way to . . . 
the back of his vehicle.”
        Officer 
Young testified that he conducted the horizontal gaze nystagmus test on 
Appellant and testified that the test indicated that Appellant was impaired. 
Officer Young also testified that he asked Appellant to perform the one-legged 
stand test. According to Officer Young’s testimony, Appellant “stated that 
he could not perform the test, and he attempted the test for approximately two 
seconds” before putting his foot on the ground. Finally, Officer Young 
requested that Appellant take the nine-step-walk-and-turn test. Officer Young 
testified that Appellant did not follow directions, starting before he was told 
to begin, failing to touch any of the steps heel to toe, and failing to count 
aloud. Appellant twice asked what step he was on, and he continued counting 
beyond nine steps, taking thirteen steps in total.
        Officer 
Young testified that he then asked Appellant to touch his thumb to each of his 
fingers and count aloud one-two-three-four, four-three-two-one. Officer Young 
stated that Appellant
 
was unable to touch his thumb to his forefingers, and the 
counting was slurred. I couldn’t understand if he was saying numbers or what 
he was saying. He was looking down at his hand trying to manipulate his fingers 
and, I assume, attempting to count, but I couldn’t understand what he was 
saying.
 
Officer Young opined that, based on his observations and 
testing of Appellant, Appellant was intoxicated at the time he pulled him over.
        After 
Officer Young arrested the passenger of the car for public intoxication, he 
searched the vehicle and found, among other things, “a six-pack of Milwaukee 
beer in a brown paper bag and five open Milwaukee beer cans, 12-ounce cans, in 
the rear passenger area.” Appellant was taken to the Hood County Jail 
intoxilyzer room, where he was observed and read his statutory DWI warnings. 
While in the intoxilyzer room, Officer Young asked Appellant what his middle 
initial “S” stood for. Appellant first responded, “Shit,” and Officer 
Young testified that he asked him again to state his middle name. Officer Young 
testified that “[Appellant] began to slur the words, and I couldn’t 
understand what he was trying to tell me.” Officer Young testified that after 
he had read the statutory DWI warning to Appellant, Appellant refused to provide 
a specimen of his breath.
        Deputy 
Michael Holly testified that he was riding with Officer Young on December 28, 
1999 and observed Appellant’s arrest. Deputy Holly testified that he “s[aw] 
enough of these field sobriety tests to understand what was going on,” saw how 
Appellant interacted with Officer Young, and heard Appellant talk. Deputy Holly 
testified that he formed the opinion that Appellant was intoxicated and could 
not safely operate a motor vehicle.
        Finally, 
Officer Frederick Bauer testified for the State that he is the Chief 
Administrator for the Hood County Sheriff’s Department and that he provided 
assistance with Appellant’s arrest on December 28, 1999. Officer Bauer 
testified that he drove Appellant to the county jail. When asked whether Officer 
Bauer noticed anything unusual about Appellant, Officer Bauer stated, “There 
was a strong smell of alcohol beverage [sic] in the patrol unit that wasn’t 
there before he got into the vehicle.” Officer Bauer also testified that 
“[h]is speech was slurred.” Officer Bauer testified that Appellant tried to 
talk to him, but Officer Bauer stated that he tried to limit conversation 
because “[h]e was intoxicated, and I didn’t want to carry on a conversation 
with an intoxicated person.”
        According 
to Officer Bauer, when he asked Appellant to get out of his patrol car, 
Appellant became “belligerent” and “told [him] to take [his] fucking hands 
off of him.” Officer Bauer stated that he had to physically remove Appellant 
from the car. Officer Bauer testified that Appellant “went limp” and would 
not stand up. Appellant accused Officer Bauer of hitting him in the face, but 
Officer Bauer testified that he did not hit Appellant and that “[he] brushed 
[Appellant’s] face with [his] hand” when Appellant went limp and his “head 
went down through the jacket.”
        Officer 
Bauer took Appellant to the intoxilyzer room, where Appellant was videotaped. 
Officer Bauer testified that he observed Appellant in the intoxilyzer room, 
interacted with Appellant, saw him interact with other officers, and heard him 
speak. Based on his observations of Appellant, Officer Bauer opined that 
Appellant was intoxicated. On cross-examination, Officer Bauer testified that he 
had never met Appellant before and did not know about his normal demeanor or 
what he normally sounded like.
        The 
State then played the roughly ten to fifteen minute long videotape from the 
intoxilyzer room for the jury. Throughout the time Appellant was in the 
intoxilyzer room, he stood in a painted square on the floor. On the tape, 
Appellant appears to stand still without swaying or using his arms for balance 
while awaiting the arrival of the arresting officer and during subsequent 
questioning. Appellant speaks with several of the officers in the room, asking 
them if they know or have heard of various people. Despite Officer Young’s 
testimony that he could not understand what Appellant was saying (after 
Appellant stated that his middle name was “Shit”), the videotape shows 
Appellant saying and spelling his middle name. Among other things, the tape 
shows Appellant, at one point, saluting the officer who was reading his 
statutory DWI warnings, and it shows Appellant asking for a trash can in which 
he could throw away his copy of the warnings after they were read to him. 
Appellant decided, however, to keep his copy, placing the paper in his pocket. 
The videotape also shows Appellant’s refusal to provide a specimen of his 
breath.
        The 
State rested after calling these three witnesses and playing the videotape. 
After the trial court denied Appellant’s request to provide the jury with a 
personal demonstration of his speech and the condition of his mouth, Appellant 
rested. Each side then argued its case to the jury. Appellant’s counsel 
argued, in part, that the arresting officers “don’t know his normal 
demeanor” or “his normal speech.” Counsel further stated, “They didn’t 
really have any basis upon which to judge him, except what they saw that day and 
their own past experiences. But what we have got here is a suspicion, but not 
proof.”
        During 
the rebuttal portion of the State’s closing argument, the State reminded the 
jury of Appellant’s demeanor, “how he looks and talks.” The State 
suggested that Appellant’s poor performance on the field sobriety tests, his 
not paying attention as the officer read his statutory warnings, his attitude 
toward the officers, and his giving the word “shit” as his middle name, 
among the other evidence, tended to prove that he was intoxicated. The State 
also argued,
 
His speech says it all. Even with the worse [sic] 
speech impediment or defect in the world, nobody sounds like that unless you 
have had too much alcohol. These officers could hardly understand him on many 
occasions when he would force it, concentrate some, see, and get it out. But 
when he’s thinking about one thing and trying to say another, it all comes 
out. That is the divided attention problem that alcohol causes for you. 
[Emphasis added.]
  
The State encouraged the jury to view the videotape again 
and argued,
 
If you think there is any question at all this defendant 
didn’t have the normal use of his faculties, just look at it. And it is just 
obviously clear that nobody would act like this, look like this, talk like 
this or respond this way, unless it was the alcohol doing the talking and 
walking for him. And that’s what you have before you. [Emphasis added.]
  
        All 
three officers who opined that Appellant was intoxicated based their opinion in 
part on the fact that Appellant’s speech sounded slurred. Indeed, the 
videotape shows that Appellant’s speech was slurred and difficult to 
understand at times. This fact was highlighted by Officer Young’s testimony 
that he could not understand Appellant and by the videotape, on which the 
officer repeatedly asked Appellant to say his middle name because he could not 
understand what Appellant was saying. During its closing argument, the State 
repeatedly called attention to Appellant’s speech and urged the jury to find 
him guilty, in large part, based on his speech, arguing that “[h]is speech 
says it all.” In listening to the audiotape of Appellant reading a portion of 
the court’s charge, which was made for his bill of exceptions, we observe that 
Appellant’s speech sounds slurred and is similar to the sound of his speech on 
the videotape from the intoxilyzer room. Of course, the jury did not have the 
ability to compare Appellant’s speech on the night of his arrest to his normal 
manner of speech and did not have a basis to believe that Appellant’s speech 
was affected by factors other than or in addition to the consumption of alcohol.
        Based 
on our thorough review of the record, including the videotape and the audiotape, 
we cannot say with fair assurance that the error in this case did not influence 
the jury’s determination of Appellant’s guilt or that it had only a slight 
effect. See Tex. R. App. P. 
44.2(b); Kotteakos, 328 U.S. at 765, 66 S. Ct. at 1248; Russell, 
113 S.W.3d at 549-50. Because the State emphasized and heavily relied on 
evidence of Appellant’s manner of speech, even with other evidence tending to 
show that Appellant was intoxicated at the time of his arrest, the error in 
disallowing Appellant to present a personal demonstration of his manner of 
speech and the condition of his mouth so disrupted the jury’s orderly 
evaluation of the evidence that his conviction is tainted. See Harris, 
790 S.W.2d at 587-88; Russell, 113 S.W.3d at 550. We therefore hold that 
the trial court’s erroneous exclusion of Appellant’s personal demonstration 
of his speaking ability and the physical condition of his mouth during trial 
constituted harmful error. See Tex. 
R. App. P. 44.2(b); Kotteakos, 328 U.S. at 765, 66 S. Ct. at 1248; 
Harris, 790 S.W.2d at 587-88; Russell, 113 S.W.3d at 550; see 
also Elmore v. State, 116 S.W.3d 809, 815-16 (Tex. App.—Fort Worth 2003, 
pet. ref’d) (holding trial court’s erroneous exclusion of letter affected 
defendant’s substantial rights); Sunbury v. State, 33 S.W.3d 436, 
442-43 (Tex. App.—Houston [1st Dist.] 2000) (holding trial court’s erroneous 
exclusion of defendant’s rebuttal evidence during sentencing phase was not 
harmless error under Tex. R. App. P. 
44.2(b)), aff’d, 88 S.W.3d 229 (Tex. Crim. App. 2002). Appellant’s 
first two issues are sustained.
Conclusion
        Having 
sustained Appellant’s first two issues, we reverse the trial court’s 
judgment and remand this cause for a new trial.
  
 
                                                          ANNE 
GARDNER
                                                          JUSTICE
  
 
PANEL F:   DAUPHINOT, HOLMAN, 
and GARDNER, JJ.
 
PUBLISH
 
DELIVERED: August 
27, 2004


NOTES
1.  Issue One: Whether the trial 
court erred in not allowing Appellant to demonstrate his normal faculty of 
speech to the jury.
        Issue 
Two: Whether the trial court erred in refusing to let defense counsel show the 
jury the condition of Appellant’s mouth.
2.  We observe, however, that 
Appellant’s prayer for relief in his brief on his petition for discretionary 
review asks the court of criminal appeals, in part, to “hold that the Second 
Court of Appeals erred in affirming the trial court’s ruling not to allow the 
Appellant to demonstrate his voice before the jury without being subject to 
cross-examination.”  Appellant’s prayer does not request relief from 
the denial of any “other demonstrations.”