

# NUMBER 13-23-00027-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**MARIO MORALES,**                                      **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                  **Appellee.**

## On appeal from the 187th District Court
## of Bexar County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justice Benavides and Tijerina
Memorandum Opinion by Justice Benavides**

A jury convicted appellant Mario Morales of continuous sexual abuse of a young child, a first-degree felony, and assessed his punishment at life imprisonment. *See* TEX. PENAL CODE ANN. §§ 12.32(a), 21.02(b). On appeal, Morales raises nine issues: (1) the trial court erred in allowing the complainant's uncle to testify as an outcry witness; (2) the

trial court erred in admitting a "pen pack" containing extraneous offense and bad conduct evidence without first holding a preliminary hearing; (3–4) the trial court erred in admitting the bad conduct evidence because it was irrelevant and unfairly prejudicial; (5) the trial court erred in admitting hearsay and additional extraneous offense evidence contained in the complainant's medical records; (6–7) the trial court failed to include limiting instructions in the jury charge regarding the extraneous offense and bad conduct evidence; (8) the trial court erred by admitting hearsay evidence offered by a police officer; and (9) his trial counsel's failure to object to most of the complained-of evidence rendered his performance ineffective.[1]  We affirm.[2]

## I.     BACKGROUND

In 2019, Morales was indicted for continuous sexual abuse of a child under the age of fourteen for allegedly committing two or more acts of sexual abuse against his stepdaughter Jennifer[3] during a period that began on or about September 15, 2011, and ended on or about January 15, 2014. *See id.* § 21.02(b). The specific acts of sexual abuse alleged in the indictment were various forms of aggravated sexual assault and indecency with a child by sexual contact. *See id.* § 21.02(c)(2), (4).

Jennifer, who was nineteen years old at the time of trial, testified that she and her mother began living with Morales when she was "[a]round eight [years old]" and stopped

---

[1] We have reorganized some of Morales's issues.

[2] This appeal was transferred from the Fourth Court of Appeals in San Antonio pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001.

[3] We have given the complainant a pseudonym to protect her identity. *See* TEX. CONST. art. 1, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process").

living with him when she was "[l]ike maybe ten [years old]." Jennifer believed she had just started the third grade when her mother and Morales separated. During the time that Morales and Jennifer's mother were together, the family lived in three different houses: first the "Johnson" property, then the "Valerie" property, and finally the "Meadow Trace" property. Morales was a registered sex offender when he met Jennifer's mother, and according to his registration records, which were admitted into evidence, Morales reported changes of address on June 3, 2010, August 4, 2011, and September 20, 2012. Jennifer's mother testified that these dates correspond with their moves to each property.

According to Jennifer, the first time Morales sexually abused her, she "was eight [years old]," and the family was living at the Johnson property. She could not recall a specific date, but she remembered that it was during the school year because she had stayed home sick that day. Morales was watching pornography on his laptop in the living room and asked Jennifer if she "wanted to see." He turned the laptop so that Jennifer could view the screen. Morales did not say anything at first; "he just sat there smiling at [her]." Jennifer testified that Morales then got up, closed the blinds, and told her "to lay down on the ground and take off [her] shorts." Jennifer complied, and Morales used his "hand" to touch her bare "vagina." She said he was "moving his fingers," but he did not penetrate her vagina.

The next incident occurred at the Valerie property. Jennifer said that she walked into the master bedroom to get a brush, and Morales was coming out of the master bathroom wearing a towel. Morales closed the door to the bedroom, scolded Jennifer for "walking in on him," and told her "to take off [her] shorts." She complied, and Morales

3

directed her "to get on the bed." According to Jennifer, she was lying on her back with her legs "in the air," and Morales used his hand to "spread" lotion on the "outside" of her bare "vagina" and "butthole." After applying the lotion, Morales took his towel off and "inserted his penis into [Jennifer's] butthole." She testified that she knew that it was his penis because he was "standing in front of [her]," she "felt it going in," and "[i]t hurt a lot." She said that he began to "thrust" his penis "in and out of [her] butthole" and told her "that it was okay" and "[j]ust to be quiet." Afterwards, he reportedly told her "to go to the restroom and clean [her]self."

Jennifer testified to another incident that occurred when she "was around [the] age of eight" but could not recall which house they were living in. Jennifer said she was in the living room playing with her younger brother when Morales told her to go to his bedroom. Once there, Morales told her "to lay down on the bed" and retrieved a lollipop from the dresser. Morales pulled down his pants and told Jennifer to pretend his penis was "a lollipop" and "to be careful . . . not to bite on it." According to Jennifer, Morales then positioned himself over her and alternated between placing his penis and a "grape-flavored" lollipop in her mouth. While his penis was in her mouth, "he would thrust it back and into [her] mouth" again. The assault was interrupted when her younger brother called for Morales.

The State called Dr. Lora Spiller, a child abuse pediatrician who conducted Jennifer's sexual assault examination when Jennifer was fifteen years old. Dr. Spiller testified that Jennifer accused Morales of specific acts of sexual abuse. Some of these allegations mirrored Jennifer's testimony and others differed. For example, Jennifer told

4

Dr. Spiller that the incident involving pornography included anal intercourse.

Morales's sister and mother both testified that Morales resided with each of them at different points during the alleged period of sexual abuse. For example, Morales's sister said that Morales lived with her for months at a time in 2011, 2012, and 2013. During these periods, Morales did not have access to Jennifer, according to Morales's sister. Morales also testified in his defense and denied the allegations.

The jury returned a guilty verdict and assessed punishment as indicated above. Morales filed a motion for new trial but did not raise ineffective assistance of counsel as a ground. The motion was overruled by operation of law, and this appeal followed.

## II.    OUTCRY TESTIMONY

Prior to trial, the State designated Jennifer's uncle Kelvin Fargo as an outcry witness. Neither party requested a preliminary hearing to establish that Fargo's testimony was admissible for this purpose. See TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(2). Fargo testified that Jennifer told him that Morales "was touching her inappropriately" but that "she didn't go into detail." Morales objected that Jennifer's purported statement to Fargo was not specific enough to constitute an outcry and was therefore inadmissible hearsay. The trial court conducted a hearing outside the presence of the jury and overruled Morales's objection. By his first issue, Morales maintains that Fargo did not qualify as an outcry witness.

## A.    Standard of Review & Applicable Law

Hearsay is an out of court statement offered at trial for the truth of the matter asserted in the statement. TEX. R. EVID. 801(d). Hearsay is generally inadmissible unless

5

an exception applies. *Id.* R. 802. Article 38.072 of the Texas Code of Criminal Procedure provides a statutory exception that permits the State to introduce certain hearsay statements that a child victim of sexual abuse makes to an outcry witness. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2. An outcry witness is the first person over the age of eighteen, other than the defendant, to whom the child spoke about the offense. *Id.* art. 38.072, § 2(a)(3). Among other requirements, the trial court must hold a hearing outside the presence of the jury to determine if the hearsay statement is "reliable based on the time, content, and circumstances of the statement." *Id.* art. 38.072, § 2(b)(2). To qualify for the exception, "[t]he statement must be 'more than words which give a general allusion that something in the area of child abuse is going on'; it must be made in some discernable manner and is event-specific rather than person-specific." *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (quoting *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990)).

"A trial court has broad discretion in determining the admissibility of outcry statements pursuant to this statute, and the trial court's exercise of that discretion will not be disturbed on appeal unless a clear abuse of discretion is established by the record." *Marquez v. State*, 165 S.W.3d 741, 746 (Tex. App.—San Antonio 2005, pet. ref'd). The erroneous admission of a hearsay statement constitutes nonconstitutional error that must be disregarded unless the error affects the appellant's substantial rights. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); ); *see* TEX. R. APP. P. 44.2(b). An appellate court should not overturn a criminal conviction for nonconstitutional error "if the appellate court, *after examining the record as a whole*, has fair assurance that the error

6

did not influence the jury, or influenced the jury only slightly." *Barshaw*, 342 S.W.3d at 93 (quoting *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001)).

"In cases involving the improper admission of outcry testimony, the error is harmless when the victim testifies in court to the same or similar statements that were improperly admitted or other evidence setting forth the same facts is admitted without objection." *Gibson v. State*, 595 S.W.3d 321, 327 (Tex. App.—Austin 2020, no pet.) (collecting cases); *see also Tschoepe v. State*, No. 04-06-00743-CR, 2008 WL 506190, at *3 (Tex. App.—San Antonio Feb. 27, 2008, no pet.) (mem. op., not designated for publication).

## B.    Analysis

Even if we presume that Jennifer's statement to Fargo was not sufficiently detailed to satisfy Article 38.072's requirements, *see Lopez*, 343 S.W.3d at 140, we conclude that any error in admitting Fargo's outcry testimony over Morales's hearsay objection was harmless because similar testimony had already been properly admitted. *See Gibson*, 595 S.W.3d at 327; *see also Tschoepe*, 2008 WL 506190, at *3. Prior to Fargo's testimony, Jennifer testified in detail about the alleged abuse, including allegations that, on more than one occasion, Morales used his "hand" to touch her bare "vagina." This testimony corresponded with Fargo's subsequent testimony that Jennifer accused Morales of "touching her inappropriately." *See Gibson*, 595 S.W.3d at 327; *see also Tschoepe*, 2008 WL 506190, at *3 ("Because Dean and V.T. testified about the same matter, with V.T. testifying in more detail without objection, any error in admitting the outcry evidence was cured."). Moreover, Jennifer had already testified that Fargo was the

7

first adult she reported the abuse to, and Morales continued to explore this testimony during his cross examination of Jennifer.[4] On this record, we have fair assurance that any error in admitting Fargo's outcry testimony did not have a substantial and injurious effect on the jury's verdict. *See Barshaw*, 342 S.W.3d at 93. Morales's first issue is overruled.

### III.      EXTRANEOUS OFFENSE EVIDENCE

At the beginning of the trial, the State introduced a penitentiary packet from the Texas Department of Criminal Justice that contained Morales's 2001 judgment of conviction for indecency with a child by sexual contact. The "pen pack" also included a "TDCJ Disciplinary Report and Hearing Record" showing that Morales was punished during his incarceration for tattooing another inmate. Morales acknowledges that he failed to object to this evidence at trial. Nevertheless, he argues by his second, third, and fourth issues that the trial court erred in admitting the pen pack because it failed to hold a preliminary hearing and the evidence of his penitentiary bad conduct was irrelevant and unfairly prejudicial. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a; TEX. R. EVID. 403, 404(b).

---

[4] During Morales's cross examination of Jennifer, the following exchange occurred:

[Counsel]:       [Y]ou reported this when you're 19 years old, right?

[Jennifer]:       No, I reported this when I was 13.

[Counsel]:       Okay. And that was to your uncle?

[Jennifer]:       Yes.

[Counsel]:       And so what did your uncle do with this information?

[Jennifer]:       My uncle turned and told my mother.

Later in the trial, the State introduced a medical report from Jennifer's sexual assault examination. This report quoted statements from Jennifer identifying Morales as her abuser and claiming that, although they lived together for a period, "he was [also] in and out of jail on gang related stuff." Morales objected to the report *in toto* as "bolstering," "irrelevant," and "unnecessary." His objections were overruled, and the report was admitted into evidence. Although he admittedly did not raise these specific objections at trial, Morales nonetheless contends by his sixth issue that the above statements were inadmissible because the second statement constituted impermissible extraneous offense or bad conduct evidence and neither hearsay statement was "made for the purpose of rendering a medical diagnosis or providing treatment." *See* TEX. R. EVID. 404(b), 803(4).

As Morales later concedes while discussing his claim for ineffective assistance of counsel, none of these issues have been preserved for review. "[T]he failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence." *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002); *see* TEX. R. APP. P. 33.1(a)(1). This well-settled rule applies with equal force to the admission of extraneous offense evidence, including the requirement that a trial court hold a preliminary hearing under Article 38.37. *See Smith v. State*, 595 S.W.2d 120, 123 (Tex. Crim. App. 1980) ("We have consistently held that the failure to object waives any error in the admission of evidence tending to show an extraneous offense."); *Carmichael v. State*, 505 S.W.3d 95, 103 (Tex. App.—San Antonio 2016, pet. refused) ("This court concludes that the article 38.37, section 2-a hearing requirement . . . is subject to the

9

general requirement of preservation, and is therefore subject to forfeiture."). Moreover, to further avoid waiver, an issue on appeal must comport with the objection made at trial; that is, an objection stating one legal basis may not be used to support a different legal theory on appeal. *Gibson v. State*, 541 S.W.3d 164, 166 (Tex. Crim. App. 2017) (discussing the need for the trial objection to comport with the appellate argument); *Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014) ("We are not hyper-technical in examination of whether error was preserved, but the point of error on appeal must comport with the objection made at trial."); *Medina v. State*, 7 S.W.3d 633, 643 (Tex. Crim. App. 1999) ("[A] relevancy objection at trial . . . . does not preserve error concerning a Rule 404 extraneous offense claim."). Here, Morales either completely failed to object at trial (the pen pack) or his objection at trial does not comport with his arguments on appeal (the medical report). Consequently, there is nothing for us to review, and Morales's second, third, fourth, and fifth issues are overruled. *See Carmichael*, 505 S.W.3d at 103; *Smith*, 595 S.W.2d at 123; *Gibson*, 541 S.W.3d at 166.

## IV.  LIMITING INSTRUCTIONS

In issues six and seven, Morales complains that, during the guilt/innocence phase, the trial court failed to include instructions in the jury charge limiting the jury's use of the extraneous offense and bad conduct evidence. Under Texas Rule of Evidence 105(a), when extraneous offense or bad conduct evidence is admitted for a limited purpose, upon request by a party, the trial court "must restrict the evidence to its proper scope and instruct the jury accordingly." TEX. R. EVID. 105(a). On the other hand, if the defendant fails to request a limiting instruction when the evidence is first admitted, then the evidence

is admissible for all purposes, and the trial court is not obligated to include a limiting instruction in the jury charge. *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007). Here, Morales concedes that he did not request a limiting instruction when the pen pack or medical records were admitted. Accordingly, these issues are overruled. *See id.*; *see also* TEX. R. APP. P. 33.1(a)(1).

## V. OFFICER'S HEARSAY TESTIMONY

By his eighth issue, Morales argues that one of the State's witnesses, Detective Bierman, was allowed to testify to impermissible hearsay statements made by Jennifer during her forensic interview, as well as statements made by Jennifer's mother and uncle. Morales again concedes that he did not object to any of this testimony; therefore, there is nothing for us to review. *See Saldano*, 70 S.W.3d at 889; *see also* TEX. R. APP. P. 33.1(a)(1). His eighth issue is overruled.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, we arrive at the heart of Morales's appeal—that by failing to preserve most of the above issues, his trial counsel's performance was constitutionally defective.

### A. Standard of Review & Applicable Law

The United States and Texas Constitutions guarantee a criminal defendant the right to reasonably effective assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see* TEX. CODE CRIM. PROC. ANN. art. 1.051. We evaluate claims of ineffective assistance of counsel using the two-pronged test from *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting *Strickland*). An appellant is required to show both: (1) "that counsel's

11

performance was deficient"; and (2) "the deficient performance prejudiced" appellant. *Strickland*, 466 U.S. at 687. "Failure to satisfy either prong of the *Strickland* test is fatal." *Morrison v. State*, 575 S.W.3d 1, 24 (Tex. App.—Texarkana 2019, no pet.). Accordingly, a court may bypass the first prong, and decide the issue solely on the prejudice prong. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

"In order to satisfy the first prong, appellant must prove, by a preponderance of the evidence, that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Such a showing "must be firmly founded in the record." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We indulge "a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Id.* "Trial counsel should generally be given an opportunity to explain his actions before being found ineffective." *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017). "Thus, if the record does not contain affirmative evidence of trial counsel's reasoning or strategy, we presume counsel's performance was not deficient." *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021). "In the face of an undeveloped record, counsel should be found ineffective only if his conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

"Trial counsel's failure to object to admissible evidence does not constitute

12

ineffective assistance of counsel." *Oliva v. State*, 942 S.W.2d 727, 732 (Tex. App.—Houston [14th Dist.] 1997, pet. dism'd). Instead, to show deficient performance based on a failure to object to allegedly inadmissible evidence, the appellant "must show that the trial judge would have committed error in overruling such objection." *Ex parte Parra*, 420 S.W.3d 821, 824–25 (Tex. Crim. App. 2013) (quoting *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011)).

Yet, even if the performance was deficient, such an error does not warrant setting aside the judgment if there has been no prejudicial effect on the outcome. *United States v. Morrison*, 449 U.S. 361, 364–65 (1981). "Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Strickland*, 466 U.S. at 695–96. "Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696. The test for prejudice requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In conducting our analysis, we consider the totality of the evidence before the factfinder. *Id.* at 695.

## B.    Analysis

Morales contends that, by waiving the above issues, his trial counsel's performance was objectively deficient. The State responds that, based on the limited record before us, Morales has failed to overcome the strong presumption that his trial

13

counsel's performance fell within professional norms. The State suggests several reasons why Morales's trial counsel may have elected not to challenge some of the complained-of evidence, either because he considered the evidence advantageous for Morales or he did not want to draw unwanted attention to evidence that was likely admissible. The State also contends that, even if counsel's performance was deficient, Morales has failed to show a reasonable probability that the outcome of his trial would have been different if this evidence had been excluded or limited.

### 1. Prior Conviction

To begin, Morales complains that his trial counsel erred by failing to request a preliminary hearing on the admission of his 2001 judgment of conviction for indecency with a child by sexual contact, thereby waiving any complaint about the lack of such a hearing. *See Carmichael*, 505 S.W.3d at 103. As previously mentioned, the State notified Morales that it intended to introduce his prior conviction under Article 38.37, which "statutorily expands the admissibility of extraneous-offense evidence in a trial involving certain offenses against children, including the sex offense[] at issue here." *See Perez v. State*, 562 S.W.3d 676, 685 (Tex. App.—Fort Worth 2018, pet. ref'd). Notwithstanding Rule 404(b), which generally limits the use of extraneous offense evidence, Article 38.37 permits the admission of evidence of prior sexual offenses for "any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *Compare* TEX. R. EVID. 404(b), *with* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). In other words, extraneous offense evidence admitted under Article 38.37 "is, by definition, propensity character evidence" that the

14

Legislature has deemed "admissible notwithstanding those characteristics." *Harris v. State*, 475 S.W.3d 395, 402 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Before admitting such evidence, the trial court "must" conduct a preliminary hearing outside the presence of the jury to "determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a.

Morales concedes in his brief that his prior conviction was relevant as character-conformity evidence. *See id.* art. 38.37, § 2(b). Nevertheless, he maintains that his trial counsel should have requested a preliminary hearing, thereby forcing the trial court to make a reasonable-doubt determination. *See id.* art. 38.37, § 2-a.

The record is silent as to trial counsel's subjective strategy; however, failing to object to admissible evidence is not error. *Oliva*, 942 S.W.2d at 732; *see West v. State*, 474 S.W.3d 785, 792 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("Due to the likelihood that the testimony is admissible, defense counsel's failure to object did not rise to the level of deficient performance."); *Wheeler v. State*, 433 S.W.3d 650, 656 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) ("[I]t is sound trial strategy for opposing counsel to choose not to object to leading questions when the evidence will come in anyway." (alteration in original) (quoting *Young v. State*, 10 S.W.3d 705, 713 (Tex. App.—Texarkana 1999, pet. ref'd))). Here, it was undisputed at trial that Morales had been convicted of the prior offense, and he makes no suggestion otherwise on appeal. The State introduced a copy of his 2001 conviction, as well as records pertaining to his registration as a sex offender, and Morales later agreed to these facts during his

testimony. This evidence was sufficient to establish beyond a reasonable doubt that Morales committed the separate offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a; *see also Jurado v. State*, No. 08-17-00010-CR, 2019 WL 1922757, at *8 (Tex. App.— El Paso Apr. 30, 2019, pet. ref'd) (not designated for publication) (holding "that the judgment of [the appellant's] prior conviction and related probation records, was sufficient evidence to establish the conviction beyond a reasonable doubt"). Accordingly, Morales has failed to demonstrate that, but for his trial counsel's failure to request a preliminary hearing, his prior conviction would not have been admitted. *See Ex parte Parra*, 420 S.W.3d at 824–25.

Relatedly, Morales generally complains that his trial counsel waived his right to a limiting instruction by failing to request one at the time his prior conviction was admitted. *See Delgado*, 235 S.W.3d at 251. Morales has not explained exactly what instruction he thinks he was entitled to. His prior conviction was admitted under Article 38.37, not Rule 404(b); therefore, unlike evidence admitted under Rule 404(b), it was admissible for "any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b); *Robisheaux v. State*, 483 S.W.3d 205, 218 (Tex. App.—Austin 2016, pet. ref'd) (noting that, "where evidence of extraneous offenses is admitted under section 2 of article 38.37 rather than under Rule of Evidence 404[,] . . . the jury is not provided with a limiting instruction setting out the permissible uses for extraneous-offense evidence and is instead allowed to use the evidence for any relevant matter including character conformity"). To be sure, he would have been entitled to a

16

beyond-a-reasonable-doubt instruction, *see* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a, but given the fact that Morales was not contesting the prior conviction, any such instruction would have been superfluous. Moreover, it may be sound trial strategy to avoid drawing unnecessary attention to extraneous offenses. *McNeil v. State*, 452 S.W.3d 408, 414–15 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (holding appellant failed to satisfy the first *Strickland* prong where trial counsel explained on the record that he did not want a limiting instruction regarding extraneous offenses because it would draw unwanted attention to those offenses); *Agbogwe v. State*, 414 S.W.3d 820, 838 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("It is reasonable to conclude . . . [that] defense counsel decided that seeking an instruction to disregard Ozoh's testimony would only bring further attention to it."); *see Delgado*, 235 S.W.3d at 250 ("[T]he decision of whether to request a limiting instruction concerning the proper use of certain evidence, including extraneous offenses, may be a matter of trial strategy."). On the record before us, Morales has failed to demonstrate that his trial counsel made any errors with respect to the admission of his prior conviction.

## 2.    Penitentiary Bad Conduct

Morales complains that the unobjected-to pen pack also included evidence of his disciplinary record in prison that was irrelevant and unfairly prejudicial. To the extent that this evidence was admissible, Morales contends that his trial counsel also erred by failing to request a limiting instruction in conformity with Rule 404(b). Even if we assume that this evidence was inadmissible, we conclude that the effect it had on the jury's deliberations, if any, was trivial. *See Strickland*, 466 U.S. at 695–96.

17

When the pen pack was introduced into evidence, the sponsoring witness confirmed that it contained "a conviction for Mario Morales . . . for the offense of indecency with a child by contact." Several other witnesses, including Morales, were subsequently asked about his prior conviction and corresponding reporting requirements. Conversely, no witness was asked about the one-page "TDCJ Disciplinary Report and Hearing Record," which showed that Morales was punished during his incarceration for tattooing another inmate. Moreover, this evidence was never mentioned by either side at any point in the proceeding. Having examined the entire record, including Jennifer's detailed testimony describing the various acts of sexual abuse, we are confident that the inclusion of this bad conduct evidence did not have a prejudicial effect on the outcome of the trial. *See Morrison*, 449 U.S. 361, 364–65; *Strickland*, 466 U.S. at 694; *see also Gomez-Gonzalez v. State*, No. 12-22-00148-CR, 2023 WL 5666214, at *6 (Tex. App.—Tyler Aug. 31, 2023, no pet.) (mem. op., not designated for publication) (assuming deficient performance for failure to object to allegedly inadmissible evidence but finding no harm because the evidence of appellant's guilt, including the complainant's testimony regarding the sexual assault, "was strong").

### 3. Medical Records

Morales next complains that two statements in Jennifer's medical records were inadmissible, and his trial counsel's failure to object to these statements was therefore deficient. He first claims that Jennifer's identification of Morales as her abuser was impermissible hearsay because it was not made for the purpose of medical diagnosis or treatment. *See* TEX. R. EVID. 803(4) (providing an exception to the rule against hearsay

for "[a] statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause"); *see also Taylor v. State*, 268 S.W.3d 571, 591 (Tex. Crim. App. 2008) (noting that "a statement from a child-declarant revealing the identity of the perpetrator of sexual abuse" may be pertinent to medical treatment "particularly when the perpetrator might be a family or household member and it is important to remove the child from the abusive environment").

Even if we assume that this statement was inadmissible, any error in admitting the report was harmless because the State offered other properly admitted evidence identifying Morales as Jennifer's abuser. *See Lee v. State*, 639 S.W.3d 312, 317 (Tex. App.—Eastland 2021, no pet.) ("The improper admission of evidence is harmless when the same facts are proven by other properly admitted evidence."). Specifically, both Jennifer and Dr. Spiller testified at length about the ways in which Morales sexually abused Jennifer. *See Taylor*, 268 S.W.3d at 593 (holding that error in admitting the complainant's statement to counselor identifying defendant as assailant was harmless when the complainant repeatedly told her version of events to other witnesses and the jury); *Lamerand v. State*, 540 S.W.3d 252, 257 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (holding that any error in admitting identifying statement in medical records was harmless because the complainant "herself testified in detail about the abuse, specifically identifying [the appellant] as the man who assaulted her"); *see also Perez v. State*, No. 14-11-01102-CR, 2013 WL 655714, at *6 (Tex. App.—Houston [14th Dist.] Feb. 21, 2013, no pet.) (mem. op., not designated for publication) (holding that erroneous admission of

19

complainant's medical records was harmless when same facts were "established by the complainant's own testimony and the testimony of the deputy constable who took her statement and observed her injuries"). Consequently, with respect to the admission of the identifying statement in Jennifer's medical records, Morales cannot satisfy the second prong of *Strickland*. *See* 466 U.S. at 695–96; *Morrison*, 449 U.S. at 364–65.

Similarly, Morales complains that Jennifer's statement that Morales was "in and out of jail on gang related stuff" was impermissible extraneous offense evidence not made for the purpose of medical diagnosis or treatment. *See* TEX. R. EVID. 404(b), 803(4). "[G]ang-related evidence tends to be irrelevant and prejudicial if not accompanied by testimony that puts the evidence into context." *Ex parte Martinez*, 330 S.W.3d at 902. However, the State suggests that trial counsel may have elected not to object to this statement because it supported Morales's defensive theory that he had limited access to Jennifer. *See West*, 474 S.W.3d at 791 (collecting cases for the proposition that failing to object to extraneous offense evidence can be a reasonable trial strategy); *see also Murphy v. State*, No. 01-17-00588-CR, 2018 WL 6378004, at *14 (Tex. App.—Houston [1st Dist.] Dec. 6, 2018, no pet.) (mem. op., not designated for publication) ("[E]ven the failure to object to inadmissible evidence may be a sound trial strategy."). We agree with the State. Because this may have been a legitimate trial strategy, and the record is otherwise silent, Morales has not overcome the strong presumption that trial counsel performed within reasonable standards. *See Thompson*, 9 S.W.3d at 813.

Regardless, although the medical report was admitted into evidence and contains the complained-of statement, Dr. Spiller did not testify about that specific statement, and

neither side mentioned it at any point in the proceeding. In other words, like the disciplinary report from Morales's incarceration, it is not clear to us that the jury was even aware of its existence. Thus, even if trial counsel should have objected to this statement, Morales cannot satisfy the second prong of *Strickland* because there is no reasonable probability that the outcome would have been different had the subject evidence been excluded. *See* 466 U.S. at 695–96; *Morrison*, 449 U.S. at 364–65.

### 4. Hearsay

Finally, Morales argues that Detective Bierman was allowed to testify to impermissible hearsay. Morales claims that, as the State walked Detective Bierman through the course of his investigation, he testified to various statements made by Jennifer during her forensic interview, as well as statements made by Jennifer's mother and uncle regarding Jennifer's accusations against Morales. According to Morales, these "statements were being offered to prove the substance of sexual assault rather than information acted upon by Detective Bierman." Morales argues that his counsel was deficient in failing to object to this allegedly inadmissible hearsay.

We have reviewed Detective Bierman's testimony and find the complained-of statements to be general in nature (e.g., Jennifer accused Morales of sexual abuse) and cumulative of Jennifer's and Dr. Spiller's more specific testimony describing the alleged sexual abuse. Therefore, Morales "cannot show the lack of objection to these statements constituted ineffective assistance." *See McNeil*, 452 S.W.3d at 420 (collecting cases finding harmless error); *Lee*, 639 S.W.3d at 317.

## C.    Summary

Looking at the totality of the evidence, this case, like most of its kind, turned on the jury's assessment of Jennifer's and Morales's credibility. *See Hammer v. State*, 296 S.W.3d 555, 561–62 (Tex. Crim. App. 2009) ("Sexual assault cases are frequently 'he said, she said' trials in which the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, unaided by any physical, scientific, or other corroborative evidence."). The jury found Jennifer credible and likely would have reached the same conclusion without the complained-of evidence. *See Strickland*, 466 U.S. at 696. Accordingly, we overrule Morales's final issue.

## VII.    CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
22nd day of February, 2024.

22